# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Harper, 2013 IL App (1st) 102181**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL HARPER, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-10-2181 |
| Filed | March 29, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of defendant's third successive postconviction petition at the second stage of the proceedings on the ground that defendant failed to satisfy the "cause and prejudice" test for purposes of establishing an exception to the rule against successive postconviction petitions was reversed and the cause was remanded for a third-stage evidentiary hearing, since the "fundamental miscarriage of justice" exception applied to defendant's petition making a colorable claim of innocence, and a review of the record showed defendant presented affidavits and testimony constituting newly discovered evidence that made a substantial showing of actual innocence that warranted a third-stage hearing. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 88-CR-8605; the Hon. Kenneth J. Wadas, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Kieran M. Wiberg, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Tasha Marie Kelly, and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Justices Rochford and Delort concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises from the July 1, 2010 order entered by the circuit court of Cook County, which dismissed, at the second stage of the proceedings, a third successive postconviction petition filed by defendant-appellant Michael Harper. On appeal, the defendant argues that his third successive postconviction petition should advance for a third-stage evidentiary hearing, because he made a substantial showing that he was actually innocent of the crimes for which he was convicted. For the following reasons, we reverse the judgment of the circuit court of Cook County and remand the cause for a third-stage evidentiary hearing.

¶ 2                           BACKGROUND

¶ 3    In May 1988, an arson occurred at a building located on the 400 block of East 63rd Street in Chicago, Illinois. The building housed several businesses, including a drug store, sandwich shop, discount store, barbershop, video store and the King Chef restaurant. Two victims, Pismai Panichkarn and Kiert Phophariat, died of smoke inhalation during the fire. Subsequently, the defendant was charged with first-degree murder, arson, and aggravated arson.

¶ 4    On April 23, 1990, a jury convicted the defendant of arson and first-degree murder. On direct appeal, this court reversed the defendant's conviction and remanded for a new trial, holding that the cumulative impact of many trial errors denied him a fair trial. *People v. Brown*, 253 Ill. App. 3d 165, 624 N.E.2d 1378 (1993).

¶ 5    In July 1994, on retrial, the following evidence was presented to the jury.[1] The State read a transcript of the testimony of Sid Malone (Malone) from the defendant's first trial. Malone

_____

    [1]Our recitation of the evidence presented at the 1994 retrial of the defendant is primarily reproduced from this court's April 26, 1999 opinion affirming the defendant's conviction and sentence on retrial. See *People v. Harper*, 279 Ill. App. 3d 801, 665 N.E.2d 474 (1996).

did not testify in the defendant's second trial. In the transcript that was read to the jury in the second trial, Malone testified that on May 28, 1988, at about 5 a.m., he saw a van with license plate number GAS 403 in front of a video store in the 400 block of 63rd Street. He observed two people, one of whom carried a gasoline can, walk in front of the van toward the video store. A few minutes later, Malone saw smoke emanate from the video store. Malone was unable to identify the individuals he observed.

¶ 6 Officer David Brown (Officer Brown) testified in the defendant's second trial that at 5 a.m. on May 28, 1988, he saw smoke coming from the video store. He exited his car and began knocking on storefront windows. At this point, the defendant approached him and asked whether the "Chinese or Oriental people" got out. The defendant identified himself as the owner of the video store.

¶ 7 Detective Joseph Campbell (Detective Campbell), an expert in the determination of the causes and origins of fires, testified that the fire was intentionally set and that it originated in the rear of the video store. Detective Campbell recovered debris samples from the rear of the video store. In executing a search warrant for the defendant's Ford Bronco, which bore license plate number GAS 403, Detective Campbell recovered X-rated videotapes. He was alerted by a citizen as to a gasoline can near the scene of the fire, which Detective Campbell photographed. At trial, Detective Campbell identified the photograph as being a photograph of the gasoline can.

¶ 8 Detective David Kutz (Detective Kutz) testified at the defendant's second trial that he interviewed the defendant at the police station, during which the defendant confessed that he intended to burn videotapes to collect insurance proceeds. The defendant also informed Detective Kutz that he was the only person with keys to the video store and the Ford Bronco.

¶ 9 Marshall Levin (Levin) testified at the defendant's second trial that he leased the retail space of the video store to the defendant. He stated that, at the time of the fire, he did not have any fire insurance on the building in which the video store was housed.

¶ 10 William Tyrell (Tyrell) testified at the defendant's second trial, as an expert in chemistry, that the debris samples recovered from the fire scene testified positive for the residue characteristic of gasoline.

¶ 11 Assistant State's Attorney Joel Whitehouse (ASA Whitehouse) testified at the defendant's second trial that in May 1988, he took a court-reported statement from the defendant. That statement was published to the jury at the second trial. He testified that he was present during the execution of the search warrant on a Ford Bronco with license plate number GAS 403.

¶ 12 In the defendant's court-reported statement, which the jury heard during the second trial, the defendant stated that the video store was owned by his mother, Roberta Holmes (Roberta). The statement went on to detail the following facts. At 3 a.m. on May 28, 1988, he drove to the video store and informed codefendant Arthur Brown (codefendant Brown) that he wanted to burn the videotapes because the business was no longer making any money and he wanted to collect the insurance proceeds. The defendant's uncle, Albert Harper (Albert), and his cousin, Jerome Ford (Jerome), were also present. Codefendant Brown agreed to assist the defendant in exchange for some X-rated videotapes, which the defendant

put in the Ford Bronco. The defendant then instructed Jerome to get some gasoline, after which Jerome left with Albert while the defendant and codefendant Brown stayed at the video store. Codefendant Brown then bent the burglar bars at the back of the store. Codefendant Brown and the defendant discussed using a mattress from the video store and putting it against the videotapes so it "would flame quicker." The reason he was burning the videotapes was to collect insurance proceeds. He knew that two "Oriental persons" had a restaurant business near his video store, that they spent nights in the restaurant from time to time, and that he knew their truck was in the neighborhood on the night of the fire. In his statement, the defendant stated that he had been treated fairly by the police and by ASA Whitehouse.

¶ 13    Firefighter Kevin Brannigan (Firefighter Brannigan) testified in the defendant's second trial that the front door of the video store was locked when he arrived at the scene. He cut the lock off. He also discovered the two deceased victims in the restaurant next to the video store. Commander Frances Burns (Commander Burns) testified in the defendant's second trial that the fire originated in the video store and that a backdraft explosion had occurred there.

¶ 14    During the defendant's second trial, the State also read the transcript of the testimony of Cecil Hingston (Hingston) from the defendant's first trial. Hingston was an unavailable witness at the defendant's second trial. In the transcript from the first trial, Hingston testified that on the morning of May 28, 1988, he was a manager and attendant at a gasoline station near the scene of the fire. At approximately 5 a.m., a man came into the station and purchased gasoline, which was put into a gasoline can. The man and a second man, who was urging the first man to hurry, both left in a white truck. Hingston believed that the white truck may have been a Ford Bronco.

¶ 15    The defense presented a stipulation that license plate number GAS 403 was registered with the Secretary of State in the name of Geronia Hopper.

¶ 16    During closing argument, defense counsel argued, *inter alia*, that the defendant's confession was a product of police coercion, and in addressing the question of motive, there was no evidence that any insurance policy existed. Following jury deliberations, the defendant was again convicted of arson and two counts of first-degree murder, and thereafter sentenced to natural life imprisonment without parole. On April 26, 1996, this court affirmed the defendant's second conviction and sentence. *People v. Harper*, 279 Ill. App. 3d 801, 665 N.E.2d 474 (1996). On October 2, 1996, leave to appeal was denied by our supreme court. *People v. Harper*, 168 Ill. 2d 608, 671 N.E.2d 737 (1996) (table).

¶ 17    On March 31, 1997, the defendant, by counsel, filed a petition for postconviction relief in which he raised issues that had primarily been raised in the second direct appeal, but included a new argument that he was actually innocent of the crimes based upon the confession of a "James Dell." However, no affidavits or supporting documentation were attached to the petition.

¶ 18    On May 16, 1997, the defendant filed a *pro se* successive petition for postconviction relief, in which he alleged that another witness, Willie Freeman, would prove his actual innocence. He further alleged various instances of ineffective assistance of counsel, due

process violations, and improper remarks by the prosecutor during closing argument.

¶ 19        On June 2, 1997, the circuit court summarily dismissed the March 31, 1997 postconviction petition, which had been filed by defense counsel. On August 11, 1997, the circuit court summarily dismissed the defendant's May 16, 1997 *pro se* postconviction petition, finding, *inter alia*, that it was a successive petition alleging claims which could have been raised in the initial petition, and that the bare allegation of actual innocence did not merit further consideration by the court. In separate orders dated December 29, 1998 and March 30, 1999, this court affirmed the summary dismissal of the defendant's two postconviction petitions. *People v. Harper*, No. 1-97-3735 (1998) (unpublished order under Supreme Court Rule 23); *People v. Harper*, No. 1-97-3023 (1999) (unpublished order under Supreme Court Rule 23).

¶ 20        On January 3, 2000, the defendant filed a petition for writ of *habeas corpus* (*habeas corpus* petition) in the United States District Court for the North District of Illinois. The *habeas corpus* petition alleged, *inter alia*, that the trial court committed constitutional errors by refusing to instruct the jury on involuntary manslaughter and by admitting into evidence at trial a photograph of the gasoline can. On April 18, 2000, the District Court, finding no constitutional violations, denied the defendant's *habeas corpus* petition. *United States ex rel. Harper v. Welborn*, No. 00 CR 0061, 2000 U.S. Dist. LEXIS 6940 (N.D. Ill. Apr. 18, 2000).

¶ 21        On July 25, 2001, the defendant requested postconviction relief in the form of a *pro se* motion to vacate unconstitutional and void judgment in the circuit court (motion to vacate), arguing that, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), his sentence was in error. On August 3, 2001, the circuit court dismissed the motion to vacate, which was affirmed on appeal by this court on April 22, 2002. See *People v. Harper*, No. 1-01-3468 (2002) (unpublished order under Supreme Court Rule 23).

¶ 22        On January 24, 2003, the defendant filed the instant successive postconviction petition, claiming actual innocence based upon a December 3, 2002 affidavit signed by Hingston, the gasoline station manager and attendant. As noted, Hingston testified at the defendant's first trial and the transcript of that testimony was read at the defendant's second trial. Thereafter, on April 18, 2003, the circuit court docketed the defendant's successive postconviction petition and appointed counsel. In its ruling, the court noted that the defendant "will get his day in court, even though he has been through the appellate court two to three times, the supreme court two to three times, and the federal district court a couple [of] times." On May 2, 2003, the circuit court granted the State additional time to file a motion to dismiss the defendant's petition.

¶ 23        On July 28, 2009, defense counsel, who was appointed to represent the defendant in advancing his postconviction petition, filed an amended petition for postconviction relief (amended postconviction petition). The amended postconviction petition asserted a claim of actual innocence based upon newly discovered evidence that a James Bell (Bell) had confessed to setting the fire for which the defendant had been convicted. The petition also alleged that in an affidavit executed on December 3, 2002, Hingston had recanted his trial testimony. Attached to the amended postconviction petition were: (1) a May 29, 2009 signed affidavit by Bell; (2) a copy of the transcripts of Bell's testimony at codefendant Brown's

postconviction proceedings; (3) a December 3, 2002 signed affidavit by Hingston; and (4) a July 23, 2009 signed affidavit by the defendant.

¶ 24    The highlights of Bell's May 29, 2009 affidavit stated that he did not know the defendant; that he believed codefendant Brown owned the video store; that codefendant Brown owed Bell over $1,500 in drug money; and that Bell set fire to the video store out of anger when codefendant Brown did not pay his debt to Bell. Transcripts of codefendant Brown's postconviction proceedings revealed that Bell testified that he was responsible for setting the fire; that he bent the burglar bars on the rear gate of the video store and kicked in the back door; that he spread gasoline on a mattress inside the video store; that he exited through the back door of the store; and that he dropped the gasoline can and left in his car. Bell further testified that he did not come forward with the information sooner because of the lingering effects of drugs and his fear of receiving the death penalty; that he had accepted Christianity while serving a sentence in prison on an unrelated matter; and that, as a result of his faith, he no longer feared prosecution for the crimes.

¶ 25    Hingston attested in his December 3, 2002 affidavit that his trial testimony was a lie; that he had not sold gasoline to anyone in a truck or a van on the morning of the arson and that he told the police this fact; that police officers informed him about two individuals who had confessed to purchasing gasoline from Hingston on that morning; that police officers threatened him with a fine and negative report to Hingston's boss if Hingston did not identify the individuals they wanted him to identify; and that Hingston cooperated with the police's request to identify certain individuals from a physical lineup. In his July 23, 2009 affidavit, the defendant attested that he co-owned the video store with his mother, Roberta; that he confessed to setting the fire because police officers threatened to charge his mother with murder; that he did not know Bell prior to the fire; that in 1997, he heard a "rumor" about "James Dell" at Statesville Correctional Center but that the defendant never personally talked with anyone by that name; that he was not housed in the same building as a James Dell or Bell; that the defendant was transferred to Tamms Correctional Center in March 1998; that he did not set fire to the video store nor had he asked anyone to buy gasoline to start a fire; and that neither he nor his mother collected any insurance money as a result of the fire.

¶ 26    On March 18, 2010, over seven years after the defendant filed his postconviction petition which is the subject of this appeal, the State filed a motion to dismiss, arguing that the instant postconviction petition was untimely; that the defendant failed to seek leave to file the successive petition; and that the affidavit of neither Hingston nor Bell was of such conclusive character that it would change the result on retrial.

¶ 27    On July 1, 2010, the circuit court ruled on the defendant's instant petition, which had first been filed on January 24, 2003. The court granted the State's motion to dismiss, finding that the instant successive postconviction petition was untimely; that it did not satisfy the "cause and prejudice" test; that the defendant did not request leave to file the successive postconviction petition; and that the affidavits attached to the petition did not conclusively show that the outcome of the proceeding would have been different had the evidence contained therein been presented. In its ruling, the circuit court specifically noted that it did not take into consideration the fact that Bell's testimony did not help codefendant Brown's case on retrial.

¶ 28    On July 8, 2010, the defendant filed a notice of appeal.

¶ 29                                    ANALYSIS

¶ 30    The sole issue on appeal is whether the circuit court properly dismissed the defendant's instant amended postconviction petition at the second stage of the proceedings. We review this issue *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 378, 701 N.E.2d 1063, 1075 (1998).

¶ 31    We feel compelled to comment at the outset on the extraordinary amount of time between when the defendant filed his postconviction petition on January 24, 2003 and when the circuit court finally ruled on the petition on July 1, 2010. Seven and a half years elapsed between the defendant's filing of his *pro se* postconviction petition and the trial court's ruling on the defendant's petition. An additional 2 ½ years have elapsed between the trial court's ruling on the defendant's petition and the issuance of this opinion, for a total of 10 years since the defendant filed the petition that is the subject of this appeal. Although there is some indication in the record that portions of the transcripts from the defendant's trial were missing and that defense counsel made efforts to locate the transcripts and conduct an investigation, this still does not give any persuasive reason for the lengthy delay to which this case has been subjected. We note also that the State suggested during oral argument that Hingston, whose testimony was prominent in the defendant's convictions and whose affidavit provides support for the defendant's current postconviction petition, has died during the pendency of the defendant's petition and this appeal. While we are not in a position to identify the exact cause of this delay, we can infer that this extraordinarily lengthy passage of time presents significant issues which impact the truth-seeking process and the issues which are at the core of this case. We urge the circuit court and the parties to avoid any further unwarranted or unnecessary protraction of the process, upon remand.

¶ 32    We now address the issues in this case. The defendant seeks a third-stage evidentiary hearing on his petition, arguing that he made a substantial showing that he was actually innocent of the crimes for which he was convicted. The State contends to the contrary that the circuit court properly dismissed the defendant's instant amended postconviction petition where the defendant failed to make a substantial showing of actual innocence.

¶ 33    The Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 2010)) provides a three-step procedural mechanism by which a convicted defendant can assert that there was a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. *People v. Harris*, 224 Ill. 2d 115, 124, 862 N.E.2d 960, 966 (2007). Under the Act, a defendant bears the burden of establishing that a substantial deprivation of his constitutional rights occurred. *People v. Waldrop*, 353 Ill. App. 3d 244, 249, 818 N.E.2d 888, 893 (2004). At the first stage, a postconviction petition may be summarily dismissed if the claims in the petition are frivolous and patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10, 912 N.E.2d 1204, 1209 (2009); see 725 ILCS 5/122-2.1(a)(2) (West 2010). However, if the petition survives initial review, the process moves to the second stage, where the circuit court appoints counsel for the defendant when the defendant cannot afford counsel. 725 ILCS 5/122-4 (West 2010). Defense counsel then has an opportunity to amend the defendant's *pro se* postconviction petition. *People v. Slaughter*, 39 Ill. 2d 278, 284-85, 235 N.E.2d 566, 569

-7-

(1968). The State may then file a motion to dismiss or an answer to the postconviction petition. 725 ILCS 5/122-5 (West 2010). At the second stage of the proceedings, if the State moves to dismiss the petition, the circuit court may hold a dismissal hearing, which is still part of the second stage. *People v. Wheeler*, 392 Ill. App. 3d 303, 308, 912 N.E.2d 681, 686 (2009). The circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 246, 757 N.E.2d 442, 446 (2001). However, the circuit court is foreclosed from engaging in any fact-finding because all well-pleaded facts are to be taken as true at this point in the proceedings. *Wheeler*, 392 Ill. App. 3d at 308, 912 N.E.2d at 686. If a substantial showing of a constitutional violation is set forth, the petition advances to the third stage for an evidentiary hearing. *Edwards*, 197 Ill. 2d at 246, 757 N.E.2d at 446.

¶ 34       In the case at bar, the relief the defendant seeks is a third-stage evidentiary hearing. As an initial matter, we note that one of the bases upon which the circuit court granted the State's motion to dismiss was that the instant successive postconviction petition was untimely. We find this to be erroneous. In the motion to dismiss, the State alleged that the instant successive postconviction petition, filed on January 24, 2003, was untimely under section 122-1(c) of the Act. However, section 122-1(c) explicitly provides that the time limitation for commencing postconviction proceedings under the Act "does not apply to a petition advancing a claim of actual innocence." 725 ILCS 5/122-1(c) (West 2010). Moreover, we note that the defendant's *initial* petition for postconviction relief, filed on March 31, 1997 and claiming actual innocence, commenced within the time limitation set forth by the Act at that time. See 725 ILCS 5/122-1(c) (West 1998) (no postconviction proceedings shall be commenced more than six months after the denial of a petition for leave to appeal before the Illinois Supreme Court). Therefore, we hold that the circuit court's findings regarding untimeliness were erroneous.

¶ 35       The circuit court also dismissed the instant successive postconviction petition on the basis that it did not satisfy the "cause and prejudice" test. We likewise find this basis for dismissal to be erroneous. The filing of only one postconviction petition is contemplated under the Act. *People v. Williams*, 2012 IL App (1st) 111145, ¶ 35. However, our supreme court has provided two exceptions under which the bar against successive proceedings will be relaxed. *People v. Edwards*, 2012 IL 111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 793 N.E.2d 609 (2002)). The first exception for relaxing the bar occurs when a defendant can establish "cause and prejudice" for failing to raise the claim earlier. *Edwards*, 2012 IL 111711, ¶ 22. The "cause and prejudice" test is codified by section 122-1(f) of the Act. See 725 ILCS 5/122-1(f) (West 2010). However, our supreme court has specifically held that a defendant setting forth a claim of actual innocence in a successive postconviction petition is excused from the "cause and prejudice" test. *People v. Ortiz*, 235 Ill. 2d 319, 330, 919 N.E.2d 941, 948 (2009). Rather, a defendant falls under the second exception for relaxing the bar to successive postconviction proceedings, known as the "fundamental miscarriage of justice" exception, where he sets forth a colorable claim of actual innocence. *Edwards*, 2012 IL 111711, ¶¶ 23-24. That is exactly the scenario in this case. Therefore, we find that the circuit court's dismissal of the instant petition for failing to satisfy the "cause and prejudice" test was erroneous.

¶ 36    Likewise, we find that the circuit court erred in dismissing the instant successive postconviction petition based on the court's finding that the defendant failed to request leave to file the petition. A defendant seeking to institute a successive postconviction petition must first obtain "leave of court." See 725 ILCS 5/122-1(f) (West 2010); *People v. Tidwell*, 236 Ill. 2d 150, 157, 923 N.E.2d 728, 732 (2010). It is the defendant's burden under the statute to obtain "leave" of court before a successive postconviction petition may be filed so that further proceedings can follow. *Tidwell*, 236 Ill. 2d at 157, 923 N.E.2d at 733. Thus, "it is incumbent upon defendant, by whatever means, to prompt the circuit court to consider whether 'leave' should be granted, and obtain a ruling on that question." *Id.* Although in most cases, "this *will* require a motion or request and an articulated argument in order to initiate court action, *** that is not necessarily so." (Emphasis in original.) *Id.*

¶ 37    Our review of the record shows, and the State concedes, that the defendant had in fact filed a "motion for leave to file and proceed in *forma pauperis*" (motion for leave to file) in January 2003, when he submitted the instant successive postconviction petition. However, the State contends that the defendant failed to ensure that the circuit court was aware of the motion for leave to file and failed to "prompt" the court to consider whether leave should be granted or to obtain a ruling on that question. Thus, the State contends, the circuit court never properly granted the defendant leave to file the petition. The State's argument is meritless. To the contrary, the record reveals that, at a status hearing on April 18, 2003, the circuit court docketed the defendant's instant successive postconviction petition and appointed counsel, while ruling and stating on the record that the defendant "will get his day in court, even though he has been through the appellate court two to three times, the supreme court two to three times, and the federal district court a couple [of] times." We hold that the act of docketing the postconviction matter, appointing counsel, and acknowledging that the defendant was entitled to be heard supports the conclusion that the circuit court granted the defendant's motion for leave to file his *pro se* successive postconviction petition. We note that when the defendant's appointed counsel finally filed an amended petition, albeit six years later, there was no challenge from the State regarding the propriety of the representation. Further, when the circuit court granted the defendant's motion for leave to file his petition and appointed counsel, we note that the defendant's *pro se* successive postconviction petition included an assertion of actual innocence and supporting affidavit from Hingston. Thus, although the court did not expressly articulate a finding of a "colorable claim of actual innocence," it can be inferred from the court's ruling. Therefore, we find that the circuit court implicitly ruled that the defendant had satisfied the threshold requirement of setting forth a "colorable claim of actual innocence," which satisfies the second exception for relaxing the bar against filing successive postconviction petitions. Moreover, the defendant's petition advanced to the second stage of the postconviction proceedings by virtue of the circuit court's granting of the motion for leave to file and appointing counsel. Accordingly, we hold that the defendant properly obtained leave to file the instant successive postconviction petition.

¶ 38    Turning to the merits of the instant petition, we determine whether the defendant made a substantial showing of actual innocence so as to warrant a third-stage evidentiary hearing. In order to succeed on a claim of actual innocence, a defendant must show that the evidence

he now presents is: (1) newly discovered; (2) material and not cumulative; and (3) of such conclusive character that it would probably change the result on retrial. *Ortiz*, 235 Ill. 2d at 333, 919 N.E.2d at 950. We examine each element in turn. We reiterate that at this stage in the postconviction proceedings, all well-pleaded facts that are not positively rebutted by the trial record are taken as true. See *People v. Childress*, 191 Ill. 2d 168, 174, 730 N.E.2d 32, 35 (2000).

¶ 39    Our supreme court has defined "newly discovered" evidence as "evidence that has been discovered since the trial and that the defendant could not have discovered sooner through due diligence." *Ortiz*, 235 Ill. 2d at 334, 919 N.E.2d at 950.

¶ 40    The defendant argues that the allegations in the instant successive amended postconviction petition and the supporting documentation presented newly discovered evidence that could not have been found earlier by the exercise of due diligence. The State counters that the evidence was not newly discovered, arguing in a footnote that this claim was barred by the principle of *res judicata*, where the defendant's initial March 31, 1997 postconviction petition alleging actual innocence based upon the confession of "James Dell" had already been rejected by the circuit court and this court. The State further contends that neither Bell's testimony nor Hingston's affidavit was newly discovered evidence, where Bell's testimony was unreliable and refuted by the evidence presented at trial, and where Hingston's affidavit was simply recanted testimony.

¶ 41    We reject the State's argument. We find that Bell's affidavit and testimony, and Hingston's affidavit, were newly discovered evidence. Transcripts of Bell's testimony at codefendant Brown's postconviction proceedings, which were attached as an exhibit to the instant postconviction petition, revealed that the first time Bell ever told anyone about his involvement in the arson for which the defendant was convicted was during a Bible study meeting at the Statesville Correctional Center in 1995 or 1996–years after the defendant's second trial had concluded in 1994. Bell's testimony also revealed that he confessed to the arson in an affidavit dated October 17, 2001–several years after the defendant's second trial in 1994 and after the defendant's filing of his first three postconviction petitions. The defendant's July 23, 2009 affidavit, which was also attached to the instant postconviction petition, averred that he did not know Bell and never had any contact with him in prison. Thus, no amount of due diligence on the defendant's part could have resulted in the discovery of Bell's confession at the time of the defendant's second trial in 1994 or shortly thereafter.

¶ 42    Likewise, we find Hingston's December 3, 2002 affidavit to be newly discovered evidence. In the affidavit, Hingston attested that his trial testimony was a lie and that police officers threatened him to obtain the testimony. Clearly, due diligence could not have compelled Hingston to testify truthfully at the first trial. The State, citing *People v. McDonald*, 405 Ill. App. 3d 131, 937 N.E.2d 778 (2010), argues that Hingston's affidavit should not be considered newly discovered because Hingston was subject to extensive cross-examination at the defendant's first trial. We reject the State's argument and find *McDonald* to be distinguishable from the facts of the instant case. In *McDonald*, the court found that the circuit court properly denied the defendant leave to file a successive postconviction petition under the "cause and prejudice" test, where the recanted testimony of a witness was not

-10-

considered newly discovered because the witness was available at the defendant's trial and was extensively cross-examined by defense counsel. *Id.* at 137, 937 N.E.2d at 784. Unlike *McDonald*, this case involves an appeal based on the *merits* of the case as outlined in the instant amended postconviction petition, and does not involve an appeal from a denial of leave to file a successive postconviction petition. Further, the record shows that Hingston was an unavailable witness at the time of the defendant's second trial, and thus, transcripts of Hingston's testimony from the defendant's first trial were read into the record at the second trial. That testimony was presented "as is" and defense counsel did not have an opportunity to cross-examine Hingston at the second trial. Thus, we conclude that Hingston's affidavit and Bell's affidavit and testimony were newly discovered evidence.

¶ 43     To the extent that the State argues that *res judicata* barred the instant actual innocence claim because the defendant had previously alleged actual innocence in his March 1997 postconviction petition based upon the confession of "James Dell," we reject this contention. Despite the similarities in the names of "James Dell" and the current affiant, Bell, we cannot speculate or assume that they describe the same person. Indeed, transcripts of Bell's testimony at codefendant Brown's postconviction proceedings, which were attached as an exhibit to the instant petition, revealed that Bell was also known by the names of "Jerry Lee Johnson" and "Michael Barry," but made no mention of the name "James Dell." Even if "James Dell" and Bell were in fact the same person, the defendant was not precluded from raising this new claim of actual innocence where it was now supported by newly discovered evidence. See *Ortiz*, 235 Ill. 2d at 333, 919 N.E.2d at 949. Thus, we find the State's arguments regarding *res judicata* to be without merit.

¶ 44     The State further argues that dismissal of the instant petition was proper where Bell's testimony and affidavit were unreliable because they were positively rebutted by the evidence at the defendant's second trial. Specifically, the State contends that Bell's testimony that he bent the burglar bars and kicked in the back door was refuted by evidence that a backdraft explosion occurred as a result of an oxygen-starved environment; that statements in the defendant's confession refuted Bell's testimony; and that Bell's testimony was rebutted by Malone's testimony. As discussed, at this stage in the postconviction proceedings, all well-pleaded facts that are not positively rebutted by the trial record are taken as true. See *Childress*, 191 Ill. 2d at 174, 730 N.E.2d at 35. Based on our review of the record, we cannot say that Bell's testimony was positively rebutted by the record at the defendant's second trial. The State's assertions require this court to speculate regarding several facts and conclusions. Further, we cannot say that Malone's testimony positively refuted Bell's confession, where Malone never identified the defendant nor any of the individuals he observed at the scene. Further, the State's argument is an invitation for this court to engage in credibility determinations as to whether the defendant's confession or Bell's confession was more believable. We decline to make such determinations. We further find that Bell's testimony and affidavit were not positively rebutted by the physical evidence at trial. In support of its arguments, the State, by including repeated references to this court's unpublished Rule 23 order pertaining to codefendant Brown's appeal, seems to imply that this court's ultimate finding in rejecting Bell's testimony in codefendant Brown's appeal should dictate a similar result in the instant case. This is clearly improper and we find that the ultimate findings of

this court in codefendant Brown's appeal cannot be substituted for a third-stage evidentiary hearing in this case. Thus, at the second stage of the postconviction proceedings, we must take all well-pleaded facts as true.

¶ 45     The second element of a claim of actual innocence is that a defendant must show that the new evidence was material and not cumulative. *Ortiz*, 235 Ill. 2d at 333, 919 N.E.2d at 950. Evidence is considered cumulative when it "adds nothing to what was already before the jury." *Id*. at 335, 919 N.E.2d at 950. Taken as true, we find that Bell's May 29, 2009 affidavit and transcripts of Bell's testimony at codefendant Brown's postconviction proceedings, which were attached as exhibits to the instant amended postconviction petition, could be considered exculpatory and support the defendant's claim of actual innocence. This information was never before the jury at the defendant's second trial and was thus noncumulative evidence. Likewise, Hingston's December 3, 2002 affidavit was also noncumulative evidence, where such evidence of police coercion was not before the jury in the defendant's second trial. We further find Bell's confession that he was the arsonist to be material to the central issue in the case–specifically, the identity of the arsonist. The State, however, argues that Hingston's affidavit was immaterial to the case because Hingston never identified the defendant as one of the persons at the gasoline station on the morning of the arson, nor did Hingston have any personal knowledge of the crime at hand. We disagree and find that, taking Hingston's affidavit as true, it was material to the issue of police coercion, which would weaken or contradict the State's case against the defendant. The defendant attests in his affidavit that he only confessed to the crime because police officers had threatened to charge his mother with murder. See *Williams*, 2012 IL App (1st) 111145, ¶ 41 (newly discovered evidence was clearly material where it weakened or contradicted the State's case against the defendant). Therefore, we conclude that the newly discovered evidence was material and not cumulative.

¶ 46     The last element required to support a claim of actual innocence is whether the new evidence is "of such conclusive character that it would probably change the result on retrial." (Internal question marks omitted.) *Ortiz*, 235 Ill. 2d at 333, 919 N.E.2d at 950. In the case at bar, one of the bases upon which the circuit court granted the State's motion to dismiss was that the affidavits attached to the amended postconviction petition did not conclusively show that the outcome of the proceedings would have been different had the evidence contained therein been presented. In its ruling, the circuit court specifically noted that it did not take into consideration the fact that Bell's testimony failed to help codefendant Brown's case on retrial.

¶ 47     The defendant argues that the newly discovered evidence, taken as true, would probably change the result on retrial. He contends that Bell's confession alone, which was supported by the physical evidence in this case, was sufficient to advance the postconviction proceedings to a third-stage evidentiary hearing. The defendant maintains that the State's evidence implicating the defendant was far from overwhelming, where no eyewitness testimony existed to directly connect the defendant to the crime, that the only evidence directly implicating the defendant was his own confession, and that he had long maintained that his confession was a product of police coercion.

¶ 48     The State counters that neither Bell's affidavit and testimony, nor Hingston's affidavit,

was of such conclusive character as to probably change the result on retrial. Specifically, the State contends that Bell's confession was nothing more than impeachment evidence that did not support a claim of actual innocence.

¶ 49    Mere impeachment evidence will typically not be of such conclusive character as to justify postconviction relief. *People v. Collier*, 387 Ill. App. 3d 630, 637, 900 N.E.2d 396, 403 (2008). However, where newly discovered evidence is both exonerating and contradicts the State's evidence at trial, it is capable of producing a different outcome at trial. *Ortiz*, 235 Ill. 2d at 336-37, 919 N.E.2d at 951-52. Here, taking as true the contents of Bell's affidavit and testimony, they could be found to exculpate the defendant from involvement in the crimes and refute the State's evidence at trial, thereby changing the result on retrial.

¶ 50    The State further argues that the "conclusive character" element of the actual innocence claim was not satisfied where Hingston's affidavit was simply a recantation of his testimony at the defendant's first trial, and that it was unreliable because the affidavit did not specifically state that Hingston's prior trial testimony was false.

¶ 51    Generally, recantation testimony is inherently unreliable. *People v. Steidl*, 177 Ill. 2d 239, 260, 685 N.E.2d 1335, 1345 (1997). In *Coleman*, however, our supreme court rejected the State's argument that the newly discovered evidence was unreliable recanted testimony, finding that the State's reliability argument was premature at the second stage of the postconviction proceedings. *Coleman*, 183 Ill. 2d at 390, 701 N.E.2d at 1076. The *Coleman* court specifically noted that the State, in filing a motion to dismiss instead of an answer to the petition, had neither refuted nor denied the allegations in the defendant's petition and supporting affidavit, and that the Act contemplates that factual and credibility determinations are to be made at the evidentiary hearing stage of the postconviction proceedings. *Id.* at 390-91, 701 N.E.2d at 1076. Applying the principles of *Coleman*, we find that here, the State filed a motion to dismiss rather than an answer to the instant petition and, as such, the reliability of Hingston's affidavit should not be determined at this stage of the proceeding. Thus, the State's arguments on this basis must fail.

¶ 52    Further, the State argues that Hingston's affidavit was not of such conclusive character as to probably change the result on retrial, where Hingston did not witness the crime and Hingston's recanted testimony did not refute the fact that the defendant committed the crime. We disagree. Based on our review of the record, we find that the State's strongest direct evidence against the defendant at trial was the defendant's own confession, which the defendant argued was a product of police coercion. No witness at trial identified the defendant as the perpetrator of the crimes. Although certain trial evidence–such as X-rated videotapes found in the defendant's truck and the burned mattress–corroborated elements of the defendant's confession, such evidence had no bearing on whether the defendant's confession was coerced by the police. Taking Hingston's affidavit as true, we find that it would lend credence to the defendant's claim that his confession was coerced, which, if believed by the fact finder in the event of a retrial, would likely change the outcome of the case. See *Williams*, 2012 IL App (1st) 111145, ¶ 41 (newly discovered evidence would likely change the result of trial where the only evidence linking defendant to the crime was his confession and no witness identified defendant as being involved); see also *People v. Almodovar*, 2013 IL App (1st) 101476, ¶ 79 (newly discovered evidence met "conclusive

-13-

character" element where no physical evidence linked defendant to the shooting and the State relied on questionable eyewitness identification). Thus, we find that the defendant met the "conclusive character" element of his claim of actual innocence. We further reject the State's argument that the defendant had forfeited any claim of police coercion as a result of his failure to raise it on direct appeal or previous postconviction petitions. The defendant is not precluded from raising the claim in the instant petition where he has come forth with newly discovered evidence. See *Ortiz*, 235 Ill. 2d at 331-33, 919 N.E.2d at 948-49 (petitioners have the right to assert a freestanding claim of actual innocence based on newly discovered evidence; multiple claims of actual innocence may be raised where each claim is supported by newly discovered evidence). Therefore, we find that the defendant has made a substantial showing of a claim of actual innocence such that he is entitled to a third-stage evidentiary hearing on the instant successive postconviction petition.

¶ 53        Reversed and remanded.