NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241008-U

NO. 4-24-1008

IN THE APPELLATE COURT

FILED
September 5, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| KARLONDO DuBOISE, | ) | No. 09CF838 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott Paccagnini, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1 *Held*: The appellate court granted the Office of the State Appellate Defender's motion to withdraw and affirmed the trial court's denial of defendant's motion to file a successive postconviction petition.

¶ 2 In April 2024, defendant, Karlondo DuBoise, filed a motion for leave to file a successive postconviction petition, claiming actual innocence, which the trial court denied. Defendant appealed, and the Office of the State Appellate Defender (OSAD) was appointed to represent him. OSAD now moves to withdraw its representation of defendant, contending it can make no meritorious argument on appeal. We agree, grant OSAD's motion to withdraw, and affirm the court's judgment.

¶ 3 I. BACKGROUND

¶ 4 The factual background of this case has been clearly set forth in defendant's prior appeals. See *People v. Duboise*, 2013 IL App (2d) 111012-U; *People v. Duboise*, 2016 IL App

(2d) 140783-U; *People v. Duboise*, 2018 IL App (2d) 160679-U. Therefore, we include only those facts necessary to address the issues presented to this court.

¶ 5        In January 2011, a jury convicted defendant of (1) attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2008)), with a special verdict form finding defendant committed the offense while armed with a firearm, (2) aggravated battery with a firearm (*id.* § 12-4.2(a)(1)), and (3) being an armed habitual criminal (*id.* § 24-1.7(a)).

¶ 6        The following evidence was adduced at trial. On March 17, 2009, Andrei Byrd drove a Dodge Magnum to Brianna Harmon's house. Brianna was Byrd's ex-girlfriend, with whom he had a daughter. Defendant was a passenger in Byrd's vehicle. Byrd and Brianna's husband, Felix Harmon, had a confrontation earlier in the day, during which Felix was accompanied by his brother-in-law, Fernando Freeman. When Byrd arrived at Brianna's house, Felix approached the driver's side door of the car and began fighting with Byrd.

¶ 7        Felix testified that, while he was fighting with Byrd, he ended up in the back seat of the car. Defendant, who was sitting in the front passenger seat, turned around, placed something "cold" under Felix's chin, and shot him. Byrd drove them to another location, where Felix was pulled out of the car. Byrd and defendant beat him until a nearby porchlight came on and they fled.

¶ 8        Meshonte Harmon, Felix's sister, testified she attempted to break up the fight between Andrei and Felix. She stated both the driver, Byrd, and the passenger, defendant, had guns, but on cross-examination, she was not sure she saw Byrd with a gun, only an "object." Meshonte hit Byrd with a bottle, and while Byrd was fighting with her in the street, the passenger shot Felix. Meshonte tried to pull Felix out of the car, but Byrd drove away.

¶ 9        Detective Michael McDonald testified he took the following statement from defendant on April 14, 2009. Defendant was accompanying Byrd to Brianna's house to pick up

Byrd's daughter. When they arrived, Felix approached Byrd and started fighting with him in the car. Defendant attempted to open the passenger-side car door and fell out of the car, landing "in a seated position" outside the car. Byrd shot Felix while defendant was outside the car, and he pulled defendant back into the car before driving away. Later, when Byrd pulled Felix out of the car and started "stomping" on him, defendant stood by and cried.

¶ 10    Defendant was sentenced to an aggregate sentence of 45 years' imprisonment. The appellate court affirmed defendant's conviction and sentence. *Duboise*, 2013 IL App (2d) 111012-U, ¶ 2.

¶ 11    In May 2014, defendant filed a *pro se* petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)), alleging ineffective assistance of appellate counsel for failing to challenge trial counsel's ineffectiveness for failing to interview or call certain witnesses. The trial court dismissed the petition as frivolous and patently without merit, and the appellate court affirmed. *Duboise*, 2016 IL App (2d) 140783-U, ¶ 2.

¶ 12    In December 2015, defendant filed a *pro se* motion for leave to file a successive postconviction petition. Attached to the petition was an "affidavit" from Byrd, which stated Felix had a gun, which discharged when they were fighting inside the car. Byrd also stated defendant was outside the car when the gun was discharged. The "affidavit" was not dated and the notary failed to verify Byrd signed the document under oath. The trial court denied defendant leave to file a successive postconviction petition, and the appellate court affirmed. *Duboise*, 2018 IL App (2d) 160679-U, ¶ 13.

¶ 13    Between 2015 and 2024, defendant filed several petitions for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2014)), which challenged his indictment and sentence. Defendant also filed several petitions for DNA

testing and an "expedited" motion for leave to file a successive postconviction petition alleging his sentence was enhanced based on an invalid prior conviction. These motions were denied or quashed by the trial court or abandoned by defendant.

¶ 14        On April 5, 2024, defendant filed a new motion for leave to file a successive postconviction petition, alleging actual innocence, which is the subject of the instant appeal. In the motion, defendant alleged he met an inmate who went by "Smoke" at the Illinois River Correctional Center in February 2024. Smoke informed defendant he was Fernando Freeman, Felix's brother-in-law, and he was present the night of the shooting. Freeman told defendant he "was the one [defendant] got into a fight with outside of the car" and that he heard the gunshot while he was fighting with defendant. Defendant attached to the motion Freeman's affidavit and a proposed successive postconviction petition, in which he further detailed his claim of actual innocence.

¶ 15        On July 5, 2024, the trial court held a Zoom hearing on the motion for leave to file a successive postconviction petition and one of defendant's section 2-1401 petitions. The court informed defendant it was denying the motion for leave to file a successive postconviction petition and would send him a copy of the written decision. The following colloquy occurred:

> "THE DEFENDANT: This man is literally letting you know that I did nothing to this man.

> THE COURT: So, [defendant], and again, you can read my reasonings, but there's a few things. First, this individual's name came out in trial, so you do have *** a require[ment] to do due diligence, and I don't believe that you found due diligence. Also, as I noted, your admission to the police officer mentioned nothing about you fighting another individual, so it's completely contradicted to your own

- 4 -

statement to the police about how you fell out of the car onto the ground, never mentioned—

THE DEFENDANT: I never told him I fell out of the car. I told him I was grabbed out of the car.

THE COURT: It's not what was—

THE DEFENDANT: I told Officer McDonald that.

THE COURT: That was—

THE DEFENDANT: And there's, there's even a police officer that said that these people said I never shot this man. I never shot this man.

THE COURT: Okay. So, [defendant], I'm just telling you this is—I read the trial transcripts, I read multiple appeals, I've read all of the different records that were out there, and there's nothing in anything that I received that said anything about you involved in a fight with another individual. You did not bring it up to the officers. Nobody testified that there was another individual that you were fighting with. In fact, the witnesses all testified contrary to that."

Defendant continued to argue with the court before walking away from the computer before the hearing concluded.

¶ 16 The trial court's written decision, filed the same day, noted defendant needed to demonstrate actual innocence to be granted leave to file a successive petition. The court determined Freeman's affidavit did "not constitute newly discovered evidence" because defendant "knew or had reason to know that [Freeman] may have information related to his case" and the motion did not indicate defendant "made any effort to pursue [Freeman]."

¶ 17 This appeal followed.

- 5 -

¶ 18                                    II. ANALYSIS

¶ 19            On appeal, OSAD moves to withdraw. Counsel for OSAD asserts he can raise no meritorious issue defendant's motion for leave to file a successive postconviction petition could meet the standards of (1) cause and prejudice or (2) actual innocence. This court advised defendant he had until April 29, 2025, to file a response to the motion, and defendant failed to do so. We agree with OSAD's assessment there is no meritorious argument the trial court erred in denying defendant's motion for leave to file a successive postconviction petition. Therefore, we grant OSAD's motion to withdraw and affirm the court's judgment.

¶ 20            The Act permits a defendant to file a petition alleging errors "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2022). Postconviction proceedings are collateral to proceedings on direct appeal, centering on constitutional claims that were not and could not have been previously decided. *People v. Moore*, 2023 IL App (4th) 210245, ¶ 44. Therefore, issues raised and adjudicated on direct appeal are barred by *res judicata*, and issues "that could have been raised but were not" are precluded by forfeiture. *Id.*

¶ 21            "The Act itself contemplates the filing of a single petition." *People v. Lusby*, 2020 IL 124046, ¶ 27. "[T]he filing of successive postconviction petitions is highly disfavored [citation] because it plagues finality." (Internal quotation marks omitted.) *People v. Clark*, 2023 IL 127273, ¶ 39. However, there are two bases upon which the bar against successive proceedings will be relaxed. *People v. Edwards*, 2012 IL 111711, ¶ 22. "The first basis for relaxing the bar is when a petitioner can establish 'cause and prejudice' for the failure to raise the claim earlier." *Id.* "The second basis by which the bar to successive postconviction proceedings may be relaxed is what is

known as the 'fundamental miscarriage of justice' exception." *Id.* ¶ 23. However, "[t]o demonstrate such a miscarriage of justice, a petitioner must show actual innocence." *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002). We review *de novo* the denial of a motion for leave to file a successive postconviction petition. *People v. Robinson*, 2020 IL 123849, ¶ 39.

¶ 22 Here, defendant's petition expressly raised a single claim of actual innocence, and he did not argue his petition established cause and prejudice for failure to raise the claim earlier. We therefore turn our focus to the actual innocence standard.

¶ 23 "To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *Id.* ¶ 47. Newly discovered evidence means evidence that "was discovered after trial and could not have been discovered earlier through the exercise of due diligence." *People v. Coleman*, 2013 IL 113307, ¶ 96. Evidence is material when it "is relevant and probative of the [defendant's] innocence," and it is noncumulative if it "adds to what the jury heard." *Id.* Finally, "conclusive means the evidence, when considered along with the trial evidence, would probably lead to a different result." *Id.*

¶ 24 In this case, there is no colorable argument Freeman's affidavit constituted newly discovered evidence that could not have been obtained through due diligence. Evidence is not newly discovered when it "presents facts already known to a defendant at or prior to trial, though the source of those facts may have been unknown, unavailable or uncooperative." (Internal quotation marks omitted.) *People v. Snow*, 2012 IL App (4th) 110415, ¶ 21. Freeman's affidavit states he was fighting with defendant at the time Felix was shot, and therefore defendant could not have fired the gun. As the trial court noted, Freeman was known to defendant at the time of trial. Witnesses mentioned Freeman's presence when Byrd confronted Felix earlier in the day, and the

State disclosed Freeman as a potential witness. Although defendant claimed in his petition Freeman's inclusion on the State's disclosure meant he was a hostile witness, nothing in Freeman's affidavit suggests he would not have testified truthfully if called at trial. See *People v. Harper*, 2013 IL App (1st) 102181, ¶ 42 (finding an affidavit newly discovered evidence where due diligence could not have compelled the witness to testify truthfully at trial).

¶ 25 Further, defendant would have known he was fighting with someone at the time of the shooting. Yet in his statement to police, defendant described falling out of the car and landing on the ground while Byrd and Felix were fighting. He never mentioned he was fighting with another person or even that another person was present. Had he informed his attorney he was fighting with someone at the time of the shooting, his attorney would have had the opportunity to investigate the matter. Since Freeman was listed as a possible State's witness, we find it unlikely defendant's attorney would not have been able to determine Freeman was the person defendant was fighting at the time of the shooting. Freeman's affidavit does not meet the threshold of "newly discovered evidence" for a viable actual innocence claim. See *Coleman*, 2013 IL 113307, ¶ 96.

¶ 26 Moreover, Freeman's affidavit is not "of such conclusive character that it would probably change the result on retrial." *Robinson*, 2020 IL 123849, ¶ 47. As we have previously addressed in defendant's prior appeals, the State proceeded with an alternative theory defendant was accountable for Byrd's actions. See *Duboise*, 2018 IL App (2d) 160679-U, ¶ 13 ("[W]hether Byrd was the shooter did not matter under the State's alternative theory that defendant was accountable for Byrd's actions."); *Duboise*, 2016 IL App (2d) 140783-U, ¶¶ 45, 60 ("[Randy] Bowman's proposed [eyewitness] testimony would not have arguably changed the result of the trial, as the State proceeded also on the alternative theory that defendant was an accomplice in the crime," and "inadmissible hearsay statements made by Brianna, while arguably relevant as to

whether defendant was the principal in the offense, shed no light on the State's alternative theory that defendant was guilty as an accomplice."). Although Freeman's affidavit is arguably relevant to whether defendant personally fired the shot that hit Felix, it does nothing to undermine the State's theory of accountability. In fact, the version of events presented by Freeman's affidavit arguably implies defendant was *more* involved in the incident than his original statement to police suggested.

¶ 27 As Freeman's affidavit does not support a viable claim of actual innocence, we agree counsel on appeal can make no colorable argument the trial court erred in denying defendant leave to file his successive postconviction petition.

¶ 28 III. CONCLUSION

¶ 29 For the reasons stated, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 30 Affirmed.