# Illinois Official Reports

## Appellate Court

---

**People v. Alexander, 2014 IL App (2d) 120810**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REICO L. ALEXANDER, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0810 |
| Filed | May 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of defendant's amended postconviction petition alleging newly discovered evidence that supported his innocence was reversed and the cause was remanded for a third-stage evidentiary hearing, since defendant was convicted of unlawful possession of a controlled substance with intent to deliver under a theory of constructive possession based on circumstantial evidence, defendant presented an affidavit from another person that was sufficient to rebut the inference that defendant had the requisite knowledge about and possession of the cocaine, raise a reasonable doubt of defendant's guilt, and change the result on retrial. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 00-CF-850; the Hon. Ronald J. White, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Thomas A. Lilien and Fletcher P. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Jorgensen and Hudson concurred in the judgment and opinion.

## OPINION

¶ 1     Defendant, Reico L. Alexander, appeals from the dismissal of his amended postconviction petition based on newly discovered evidence. On appeal, defendant argues that the trial court erred by dismissing his petition, because the allegations contained in the petition and the supporting affidavit made a substantial showing that defendant was actually innocent of the charged offense. We reverse and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3     At defendant's jury trial on one count of possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(A) (West 2000)), the State argued in its opening statement that circumstantial evidence would prove that defendant "controlled" the apartment in which police found over 80 grams of cocaine, that defendant "had constructive possession of those drugs," and that he had the intent "to distribute those drugs."

¶ 4     The State called Rockford police detective Brian Skaggs, who testified that he was working on the Metro Narcotics Unit on April 3, 2000, when he and other team members executed a search warrant at a downstairs apartment on Underwood Street in Rockford. The officers broke down the door to the apartment and Skaggs saw a man, later identified as Gradie Hawkins, run into the bathroom and flush the toilet. Also present in the apartment upon the officers' entry were Robert E. Lee and Patrick Garry. Lee got down on the floor when asked to do so by the officers. Skaggs asked the three men if they lived there, and they all said "no." Skaggs entered the northeast bedroom with Rockford police detective Mike Schneider and a search dog. The search dog found defendant hiding under a pile of clothes in the bedroom's closet. When asked, defendant denied living in the apartment and said that he did not know who lived there. Skaggs found $743 in defendant's pants pocket: 3 $50 bills, 24 $20 bills, 7 $10 bills, 6 $5 bills and 13 $1 bills. No contraband was found on any of the men.

¶ 5     Schneider testified that, in the northeast bedroom where defendant had hid, Schneider collected keys from the computer desk and that one of the keys opened the front door of the apartment. The closet in that bedroom contained men's clothing. Schneider found mail on the desk, including an Insight Communications bill and a Commonwealth Edison bill. Both bills were dated a week prior to the search, had been opened, and were addressed to defendant at the apartment. Schneider also found in that bedroom a court order in defendant's name, which appeared to be signed by defendant and dated approximately one month earlier; a receipt from Guzzardo's music store for $717.19, in defendant's name and dated the same day as the search; and a cell phone.

¶ 6     Schneider also testified as follows. When Schneider searched the northwest bedroom, he found a scale and what would later be determined to be cocaine hidden in two different pockets of a shoe rack that was hanging on the back of the bedroom door. There was one large chunk of cocaine, which was later determined to weigh 62.2 grams, and 111 baggies, each containing about 0.2 grams of cocaine. The scale was tested for fingerprints but none were found. On the dresser was a wallet containing a Blockbuster card in defendant's name, an Illinois identification card in defendant's name but with an address different from the Underwood Street address, an Eagle savings card signed by defendant, and defendant's social security card. In addition, on top of the dresser was a jewelry box containing a tie clip and a ring engraved with defendant's initials. Schneider also found $1,701 in small bills between the mattress and the box spring. Two small two-way radios were on the living-room table and two open boxes of sandwich baggies were in the kitchen.

¶ 7     Rockford police officer Todd Reese testified that, as part of the booking procedure, he asked defendant if he was employed and defendant said that he was not. Defendant gave an address in Rockford as his home, but not the Underwood Street address.

¶ 8     The State called Lee who testified as follows. Lee identified defendant and said that he had known defendant as a friend for a few months. Lee at first testified that he did not know who lived at the Underwood Street address but he also testified that defendant lived there. In a written statement to police, Lee had stated that defendant lived at the address. On previous visits to the apartment, Lee saw defendant answer the door and talk to some people. In response to the prosecutor's question, "had you seen [defendant] sell dime pieces of crack cocaine about 10 times while you were at the [apartment]?" Lee replied "Yes." When asked if Lee was "involved at all with anything at that [apartment]," Lee replied "No." On the day of the search, before the search, defendant and Garry had been at Guzzardo's music store, where they bought a studio mixing board with cash. The two men returned to the apartment and defendant used a key to let them in. Within 30 minutes the police arrived. Lee, Garry and defendant were in the computer room, but Hawkins was somewhere else in the apartment. Hawkins ran into the bathroom and Lee thought that Hawkins flushed something down the toilet. Lee was not charged in connection with the cocaine found in the apartment.

¶ 9     Forensic scientist Kelly Smitley testified that she weighed the large chunk of the substance recovered from the shoe rack and that it weighed 62.4 grams and tested positive for cocaine. The contents of three of the smaller baggies also tested positive for cocaine.

¶ 10     Narcotics detective Mark Welsh testified as follows. Welsh had extensive training in, and experience with, narcotics, and he was familiar with the tools of drug dealers. Rock cocaine is generally packaged for sale in the corners of clear plastic baggies in amounts that can be sold for $10 or $20. When caught, dealers usually have large amounts of $20 bills on their

persons. Dealers generally distribute cocaine on street corners or sidewalks or sometimes they will use rental properties. Those who deal from rental properties do not tend to stay in one location long. Dealers often rent houses in other people's names to avoid being linked to the drug activity going on inside the premises. Normally, other people besides the dealers will be involved in the distribution, so the dealers can distance themselves from the drugs and money and avoid arrest. Dealers often use others to cut and bag the drugs and to act as lookouts. Dealers often use two-way radios to report on police activity.

¶ 11   Welsh also testified as follows. The most cocaine that Welsh had ever known someone to possess without having an intent to deliver was just a couple of grams. A user generally possesses no more than two to four $10 or $20 bags, which contain a total of less than one gram of cocaine, because users generally do not have enough money to buy more than that. The large rock of cocaine found at the Underwood Street address had a street value of about $9,000, and a user would not possess this amount, because "[t]his is much more than any user would have money to buy." A dealer would break the large rock down into smaller packages and distribute it. Larger-scale dealers "sell smaller dealers this quantity, and then other dealers break it down into the twenties and dimes to sell." The scale found in the shoe rack was like hundreds he had seen in drug investigations for weighing crack cocaine before "putting it into individual baggy corners" to sell.

¶ 12   Latasha Wilson testified on defendant's behalf as follows. Latasha's sister, Danielle Wilson, was defendant's girlfriend. Latasha had planned to pick up defendant on the day of the search to take him to his first day of work. During cross-examination, Latasha testified that she had seen defendant at the Underwood Street address prior to the day of the search.

¶ 13   Danielle testified as follows. Danielle lived at an address on Leather Court in Rockford and had lived there for two years and three months. Danielle also "stayed" at the Underwood Street address with her daughter. She stated that defendant "stay[ed] some nights with me" at the Underwood Street address. Danielle signed a lease for the Underwood Street apartment in December 1999, but some of the bills were in defendant's name. In March 2000, Danielle moved back to her Leather Court home because someone broke into the Underwood Street apartment and stole a compact disc player and a PlayStation. At the time of the break-in, defendant was staying with his mother, on Iris Avenue. Sometimes defendant stayed with Danielle at her Leather Court home. After Danielle moved out of the Underwood Street apartment, some of defendant's belongings remained there and Garry stayed at the apartment and had his own key. Sometime before the day of the search, Danielle received a $1,900 income-tax-return check. Danielle cashed the check and gave the cash to defendant, expecting him to hold some of the money for her and spend the rest on music equipment. Danielle gave defendant $100 bills and $20 bills. On cross-examination, Danielle testified that she had been placed on conditional discharge for retail theft approximately nine months prior to the trial and that defendant had keys to the Underwood apartment. Danielle also testified that she did not have a checking account.

¶ 14   The jury found defendant guilty of possession of a controlled substance with intent to deliver and the trial court sentenced him to 28 years' imprisonment. On direct appeal, defendant argued that he was denied effective assistance of counsel when his attorney failed to file a motion to suppress evidence. This court affirmed the trial court's judgment. *People v. Alexander*, No. 2-00-1464 (2002) (unpublished order under Supreme Court Rule 23).

¶ 15    On October 22, 2003, defendant filed *pro se* a postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2002)), asserting: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) that the trial court considered false information in sentencing defendant; and (4) that the trial court relied on the false information to sentence defendant more severely. On January 2, 2003, the trial court appointed Francis Martinez to represent defendant on his postconviction petition. On January 23, 2003, the State filed a motion to dismiss defendant's petition. In open court, Martinez requested 45 days to investigate defendant's case and review defendant's petition. The record does not contain any document filed by Martinez regarding defendant's petition.

¶ 16    On January 28, 2004, defendant filed *pro se* a "Petition For Writ of Habeas Corpus Ad Prosequendum," and on May 28, 2004, he filed a "Petition For Mandamus Relief" and a "Motion For the Appointment of Counsel." The record is devoid of any responses to these filings.

¶ 17    On May 20, 2005, defendant filed an "Amended Petition For Post-Conviction Relief." Defendant alleged that new evidence established his actual innocence of the charged offense. Defendant supported his claim with an attached affidavit of Lee, who averred that the cocaine discovered at the apartment belonged to him and not to defendant. Lee's affidavit states:

> "I, Robert Lee, being duly sworn, deposes and states the following.
>
> On April 3, 2000, I went to the apartment where Reico Alexander lived on Underwood St. It's a two-flat apartment building. Reico lived in the first floor apartment. When I got there that day, I had some cocaine and a black scale. I had it in my pockets. I had about 90 grams of cocaine. I had all the cocaine in one large baggy. Inside the large baggy I had about 111 small baggies in on[e] bag and one large chunk, weighing about 62 grams, in another bag. Reico did not know that I [had] the cocaine and the scale on me when I came over that day. Me, Reico Alexander, and Pat, sat and talked for a while when Reico and Pat decided to go to Guzzardo's and buy some music equipment. Reico asked me if I wanted to go. I said I didn't care. I didn't want to take the cocaine and scale with me because I was afraid that we might get stopped by the police. So I told Reico that I had to make a quick call before we left and I went to the back bedroom. Once I was inside the bedroom, I placed my cocaine and scale in a cloth shoe rack hanging on the back of the bedroom door. I knew the shoe rack was there because I had been there at the apartment several times. Reico did not see me put the cocaine and scale in the shoe rack. I made sure of that. I figured I would get the cocaine and scale after we came back from Guzzardo's. After I hid the cocaine and scale in the shoe rack, me, Pat, and Reico went to Guzzardo's. We stayed at Guzzardo's for about 2 hours before heading back to the apartment. When we got back to the Apartment [*sic*] Reico started getting ready for work. Grady came over around this time. After Reico had got dressed for work, me and Pat went into the music room where he was at. We was in the music room for about 20 minutes before the police raided the apartment. Reico did not know I had the cocain[e] and scale on me when I came over earlier that day. Reico did not know that I had put the cocaine and scale in the shoe rack behind the bedroom door. I committed this crime alone and I am willing to testify in court to this."

The affidavit is signed by Lee and notarized.

¶ 18    Attorney Jeffrey Kline filed an appearance on behalf of defendant in September 2005. Kline had reviewed defendant's amended *pro se* petition and determined that the petition was sufficient; no amendments were necessary. In October 2006, David Carter began representing defendant. On October 12, 2006, Carter filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984) stating that he had consulted with defendant, examined the record, and made any necessary amendments to defendant's petition.

¶ 19    On July 21, 2009, the State filed a motion to dismiss defendant's petition. Regarding defendant's actual-innocence claim the State argued the following. The evidence in Lee's affidavit could have been discovered prior to trial, because defendant could have testified at trial that defendant had no knowledge of the cocaine. The State also argued that the evidence was not so conclusive that it would probably change the result on retrial, because: (1) Lee's testimony at trial was not entirely contradicted by his affidavit, and Lee's testimony and the testimony of others established defendant's guilt; (2) on retrial the State would offer new evidence establishing defendant's guilt; (3) Lee's averment that defendant had no knowledge of the cocaine was not believable; (4) on retrial Lee's recantation testimony would be subject to "significant impeachment by his own criminal background"; and (5) if Lee had testified at trial that the cocaine was his, he would have been impeached with the written statement he provided police and, on retrial, he would be impeached with his prior inconsistent trial testimony.

¶ 20    At the September 28, 2011, hearing on the State's motion to dismiss, the trial court heard argument from counsel but heard no testimony and considered no other evidence. On July 2, 2012, the trial court noted that it considered the record of defendant's trial, the arguments of counsel, and the postconviction filings before announcing its decision. Regarding defendant's claim of actual innocence based on Lee's affidavit, the trial court stated:

> "Recantation of testimony is regarded as inherently unreliable. In this case there was sufficient physical evidence linking Defendant to the crime, and the evidence was not comprised of the testimony of Robert Lee, therefore, an evidentiary hearing is not appropriate.
>
> I you [*sic*] believe, by my review of the transcript of the trial, the evidence presented at the trial overwhelmingly proved the Defendant guilty beyond a reasonable doubt; therefore, the Defendant's Post Conviction Petition is hereby heard and denied."

On July 20, 2012, defendant filed his timely notice of appeal.

¶ 21                                  II. ANALYSIS

¶ 22    Defendant contends that the trial court erred by dismissing his postconviction petition, because the allegations contained in his petition and the supporting affidavit made a substantial showing of actual innocence of the charged offense.

¶ 23    The Act provides a remedy for defendants who have suffered substantial violations of constitutional rights at trial. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). The Act establishes a three-stage process for adjudicating a postconviction petition. *Id.* at 471-72.

¶ 24    When a petition proceeds to the second stage, the Act provides that counsel may be appointed for the defendant if the defendant is indigent. See 725 ILCS 5/122-4 (West 2002);

*Pendleton*, 223 Ill. 2d at 472. After defense counsel has made any necessary amendments to the petition, the State may file a motion to dismiss the petition or file an answer to the petition. *Pendleton*, 223 Ill. 2d at 472. If the State files a motion to dismiss, the trial court may hold a second-stage dismissal hearing. *People v. Harper*, 2013 IL App (1st) 102181, ¶ 33.

¶ 25 At the second-stage dismissal hearing, "the defendant bears the burden of making a substantial showing of a constitutional violation." *Pendleton*, 223 Ill. 2d at 473. Further, the trial court must accept as true "all well-pleaded facts that are not positively rebutted by the trial record." *Id*. Where, as here, the defendant's claims are based on matters outside the record, the trial court is prohibited from engaging in fact finding. *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). Thus, when factual disputes require a determination of the truth or falsity of supporting affidavits or exhibits, that determination cannot properly be made at a hearing on a motion to dismiss but, rather, can be resolved only during a third-stage evidentiary hearing. *Id*. at 381. If a substantial showing of a constitutional violation is set forth, the petition advances to the third stage for an evidentiary hearing. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). We review *de novo* the trial court's dismissal of a postconviction petition at the second stage of the proceedings. *Coleman*, 183 Ill. 2d at 388-89.

¶ 26 To succeed on a claim of actual innocence, a defendant must show that the evidence he now presents is: (1) newly discovered; (2) material and not cumulative; and (3) of such conclusive character that it would probably change the result on retrial. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009). We examine each element in turn. We reiterate that, at this stage in the postconviction proceedings, all well-pleaded facts that are not positively rebutted by the trial record are taken as true. See *People v. Childress*, 191 Ill. 2d 168, 174 (2000).

¶ 27 Newly discovered evidence is "evidence that has been discovered since the trial and that the defendant could not have discovered sooner through due diligence." *Ortiz*, 235 Ill. 2d at 334. Defendant argues that Lee's affidavit is newly discovered evidence because the evidence could not have been discovered until Lee was ready to make his statements. The State does not counter defendant's argument in its response brief. Defendant alleged in his petition that "Lee's affidavit first came to light on April 26, 2005," and that "[p]rior to that time, no one had any idea that Robert Lee had committed the offense that [defendant] had been charged with, convicted of and sentenced for." Defendant also alleged that "no one knew that Lee had committed this offense *** until April 26, 2005." Defendant also alleged that, even if defendant had discovered this information prior to trial, defendant could not have forced Lee to waive his "fifth amendment right to avoid self-incrimination." Lee's affidavit was signed and notarized on April 26, 2005. Because all well-pleaded facts not positively rebutted by the record are taken as true (*Pendleton*, 223 Ill. 2d at 473), we determine that the information contained in Lee's affidavit was newly discovered evidence because it could not have been discovered prior to trial through the exercise of due diligence.

¶ 28 The second element of a claim of actual innocence that defendant must establish is that the new evidence is material and not cumulative. To support this element, defendant argues that no evidence was presented at trial indicating that the cocaine at issue belonged to Lee. Evidence is considered cumulative when it "adds nothing to what was already before the jury." *Ortiz*, 235 Ill. 2d at 335.

¶ 29 Taken as true, Lee's averments that Lee, without defendant's knowledge, brought the scale and cocaine at issue to defendant's apartment and hid the items where the police found

them are exculpatory and material. Further, the statements contained in Lee's affidavit were never before the jury at defendant's trial and, thus, are noncumulative.

¶ 30    The last element of a claim of actual innocence is that the new evidence is "of such conclusive character that it would probably change the result on retrial." (Internal quotation marks omitted.) *Id.* at 333. In this case, in its ruling dismissing defendant's petition, the trial court specifically noted that recantation testimony is "inherently unreliable." Defendant argues that Lee's affidavit does not constitute recantation testimony, because it does not contradict his testimony at trial. The State argues that the statements in Lee's affidavit are recantation testimony. Our review of the evidence presented at trial indicates that Lee's affidavit repudiates his trial testimony that he was not involved with anything in the apartment. Thus, Lee's affidavit constitutes a recantation of this testimony.

¶ 31    Defendant argues, however, that the trial court erred by determining the credibility of Lee's affidavit. Defendant argues that Lee's credibility can be assessed only at a third-stage evidentiary hearing. The State argues that although the trial court could not reject Lee's affidavit "out of hand as inherently unreliable," it "could look at the nature of the actual-innocence evidence offered, recantation evidence, as well as the trial evidence, to determine whether defendant had made a substantial showing that the [new] evidence was of a conclusive nature."

¶ 32    Generally, recantation testimony is inherently unreliable. *People v. Morgan*, 212 Ill. 2d 148, 155 (2004). However, the trial court's consideration of reliability was premature at this second stage of the postconviction proceedings. See *Coleman*, 183 Ill. 2d at 380; see also *Harper*, 2013 IL App (1st) 102181, ¶ 51 (holding that, because the State filed a motion to dismiss, the issue of the reliability of the affidavit was premature at the second stage). The trial court was foreclosed from making any determination regarding the truth or falsity of Lee's affidavit. *Coleman*, 183 Ill. 2d at 380-81. Further, all well-pleaded facts were to be taken as true at this point in the proceedings. *Id.* Thus, Lee's affidavit must be accepted as true.

¶ 33    Defendant also argues that the newly discovered evidence, taken as true, would probably change the result on retrial. Lee's affidavit rebuts the presumption that defendant knew about the cocaine and that he constructively possessed it. Defendant argues that nothing in the trial court record is inconsistent with Lee's averment that Lee brought the cocaine to the apartment and hid it without defendant's knowledge. Defendant argues that therefore he is entitled to a third-stage evidentiary hearing.

¶ 34    The State argues that, even considering the statements in Lee's affidavit as true, this evidence is not of such a conclusive nature that it would probably change the result on retrial. The State argues that if a new trial were granted after an evidentiary hearing, the trier of fact would hear as substantive evidence Lee's prior inconsistent statement that he was not involved with anything in the apartment. "However, where newly discovered evidence is both exonerating and contradicts the State's evidence at trial, it is capable of producing a different outcome at trial." *Harper*, 2013 IL App (1st) 102181, ¶ 49. In this case, Lee's affidavit taken as true contradicts the State's evidence at trial that the cocaine found in the apartment was defendant's and it exonerates him. Thus, Lee's affidavit would probably change the result on retrial regardless of Lee's trial testimony. See *id*.

¶ 35    The State also argues that defendant was found guilty under a theory of constructive possession and that the evidence was overwhelming that defendant, and defendant alone,

lived at the apartment on the date in question and was in control of the bedroom where the cocaine was found.

¶ 36    To be convicted of possession with intent to deliver, the State must prove beyond a reasonable doubt that: (1) the defendant had knowledge of the presence of the controlled substance; (2) the controlled substance was in the immediate control or possession of the defendant; and (3) the defendant intended to deliver the controlled substance. *People v. Beasley*, 384 Ill. App. 3d 1039, 1046 (2008). Where narcotics are found on premises over which the defendant has control, it may be inferred that the defendant had the requisite knowledge and possession, absent other facts and circumstances that create a reasonable doubt of the defendant's guilt. *People v. Smith*, 191 Ill. 2d 408, 413 (2000). Possession of the controlled substance can be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). Constructive possession exists where the defendant had knowledge of the presence of the controlled substance, and had control over the area where the controlled substance was found. *People v. Hunter*, 2013 IL 114100, ¶ 19. The defendant's mere presence in the vicinity of a controlled substance cannot establish constructive possession. *People v. Adams*, 242 Ill. App. 3d 830, 833 (1993).

¶ 37    In the present case, Lee averred that, *unknown to defendant*, Lee brought the cocaine at issue to defendant's apartment and hid it in the shoe rack where the police later found it. Lee's affidavit, taken as true, constitutes other circumstances sufficient to rebut the inference that defendant had the requisite knowledge and possession of the cocaine.

¶ 38    The State argues that there was overwhelming evidence that defendant lived at the apartment and was in control of the bedroom where the cocaine was found. Defendant does not challenge the State's argument. However, the inference that a defendant had knowledge and possession of narcotics found on premises over which the defendant had control is rebuttable by other facts and circumstances that create a reasonable doubt of the defendant's guilt. *Smith*, 191 Ill. 2d at 413. Lee's affidavit, taken as true, is sufficient to create a reasonable doubt of defendant's guilt in this case. Thus, the State's argument fails.

¶ 39    The State also asserts that there was overwhelming evidence that defendant had knowledge of the cocaine and had intent to sell it, because when the police entered the apartment defendant hid in a closet, showing consciousness of guilt. The State contrasts this to Lee's actions; he did not hide when the police entered the apartment; rather, he got down on the floor when ordered by the police. Further, when defendant came out of the closet, he lied to the police, telling them that he did not live at the apartment and that he did not know who did, again showing consciousness of guilt. The State also argues that the evidence was overwhelming that defendant was dealing drugs from the apartment. Lee testified at trial that he had seen defendant sell "dime bags" from the apartment approximately 10 times. In addition, the apartment contained circumstantial evidence of drug dealing, including two-way radios, $1,701 in cash hidden under a mattress in the bedroom where the cocaine was found, and $743 in small bills in defendant's pocket.

¶ 40    In this case, defendant was found guilty based on circumstantial evidence and the inferences this evidence permitted. Defendant did not take the stand. On retrial, defendant could call Lee to testify that, without defendant's knowledge, Lee brought the cocaine and scale to defendant's apartment and hid them. This would be direct evidence of defendant's innocence to be weighed against the State's circumstantial evidence, even though Lee's new testimony could be impeached with his prior inconsistent testimony, which could also be

admitted as substantive evidence. Considering that the evidence is not subject to weight and credibility determinations at this stage of the proceedings, defendant's newly discovered evidence would probably change the result on retrial. Accordingly, the trial court erred by dismissing defendant's amended petition.

¶ 41 Lastly, the State asserts that defendant's amended petition was properly dismissed because it did not contain a verification affidavit pursuant to section 122-1(b) of the Act (725 ILCS 5/122-1(b) (West 2002)). The State acknowledges that it forfeited this argument because it failed to raise it in its motion to dismiss. See *People v. Cruz*, 2013 IL 113399, ¶¶ 22-25. However, citing *People v. Hommerson*, 2013 IL App (2d) 110805, the State urges us to address this issue. Because that case was recently reversed by the supreme court (*People v. Hommerson*, 2014 IL 115638), we need not address the issue.

¶ 42                                   III. CONCLUSION

¶ 43 The judgment of the circuit court of Winnebago County is reversed, and the cause is remanded for a third-stage evidentiary hearing.

¶ 44 Reversed and remanded.

- 10 -