**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210128-U

Order filed July 13, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0128 Circuit No. 06-CF-1265 |
| | ) | |
| CAMERON ALLEN PURYEAR, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The circuit court did not commit manifest error by denying defendant's third-stage postconviction petition.

¶ 2     Defendant, Cameron Allen Puryear, appeals the Peoria County circuit court's denial of his successive postconviction petition following a third-stage evidentiary hearing. Defendant argues that the court committed manifest error where his successive postconviction petition sufficiently established a claim of actual innocence that would change the outcome on retrial. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4           The State charged defendant with two counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2006)) for the death of John Buckley. On November 27, 2007, the matter proceeded to a jury trial. The evidence at trial showed that Allen Buckley, John's brother, lived with John and owned a white car that they both used. Officers were investigating a shooting in the neighborhood and questioned John and Allen. While speaking with the officers, Allen observed the "No Love" gang watching him and John. Approximately one week later and shortly after 11 p.m., Allen heard two gunshots close to his apartment. He observed John stumble through the door and collapse. John died later that night from a gunshot wound to the chest. That same night, defendant attended a party at Nicole Mitchell's residence at 1622 Linn Street located on the southeast side of the Linn and Richmond intersection. Defendant posed for a photograph holding an automatic "military gun." Shortly after 11 p.m., defendant, along with several other individuals, entered Nicole's house looking "scared." Erica Mitchell, Nicole's sister, who also attended the party, saw defendant just after 11 p.m. near Nicole's residence at the intersection of Linn and Richmond, walking with another man toward a white car. After hearing gunshots, defendant ran back to Nicole's house and told Erica that he "shot somebody." Defendant washed his hands with bleach. The other man had defendant's black hooded sweatshirt and asked for ammonia. After, the man threw the sweatshirt into the basement. John's girlfriend, Chelsea Tyler, testified that she was on the phone with John when she heard another voice say, "[w]e heard motherfuckers snitching." Police located a black hooded sweatshirt with a white stain of unknown origin in the basement laundry area of Nicole's residence.

¶ 5           The jury found defendant guilty. The court sentenced defendant to 71 years' imprisonment. On direct appeal, defendant presented several claims of prosecutorial misconduct. *People v.*

*Puryear*, No. 3-08-0092 (2009) (unpublished order under Illinois Supreme Court Rule 23). We affirmed, finding that any errors committed were not prejudicial in light of the overwhelming evidence of defendant's guilt. Defendant filed a postconviction petition alleging various ineffective assistance of trial and appellate counsel claims. Following a second-stage proceeding, the court dismissed defendant's petition. Defendant did not appeal.

¶ 6 Defendant filed a motion for leave to file a successive postconviction petition, which is the subject of this appeal. The petition alleged a claim of actual innocence, in that Pamela Krasner "was looking at [defendant] when the gunshots rang out and [defendant] is innocent of this crime." Krasner averred that on the night of the murder, she was watching defendant when she heard two gunshots. Krasner concluded that defendant could not have been the shooter.

¶ 7 Defendant filed an amended postconviction petition, alleging that Margo Trapper provided newly discovered evidence that would change the result on retrial. Specifically, Trapper averred that she was at 1700 N. Linn Street, located on the northeast side of the Linn and Richmond intersection. Trapper was "sitting on [her] front porch observing a group of several people hanging out on the corner of Linn and Richmond." Trapper stated that she saw defendant and several others outside when she heard two gunshots. Trapper explained that she was "without a doubt certain that [defendant] was on the corner on Linn and Richmond at the time those two gunshots were fired because [she could] specifically recall making eye contact with [defendant] to see weather [*sic*] or not it was him that had gotten shot." Because it was an area where "a lot of gang members hung out," Trapper was afraid that someone would hurt her or her family if she spoke to police. Trapper was "very familiar with [defendant]," whose sister was friends with Trapper's brother. Trapper stated that defendant "could not have fired those gunshots" because "[h]e was right in front" of Trapper at the time. Trapper came forward after she spoke to defendant's mother and did not want

defendant "sitting in prison for something *** he could not have done." The court advanced defendant's petition to an evidentiary hearing.

¶ 8        Trapper testified that she lived with her sister, Krasner, on the night of the murder. Krasner had since passed away. Tapper had known defendant "for a very long time" due to their siblings being friends and living in the same neighborhood, and she could "point him out from anybody in the room." On the night of the murder, defendant was outside while Trapper was on her porch. At some point, defendant asked Trapper for a cigarette. Sometime after that, Trapper heard a gunshot and "instinctively" thought, "where is [defendant]?" Trapper specifically remembered making eye contact with defendant because she was so close to defendant that he was "essentially" at her house. Trapper was willing to come forward now after talking to defendant's mother. Following the murder, Trapper moved out of the state and "[did not] think about" the case. Trapper never contacted defendant's attorney at the time of the trial or spoke to anyone about what she knew because she was "scared." On cross-examination, Trapper testified that she had seen defendant "probably" 50 or 100 times. After the murder, Trapper "bounced around," living in different places but lived in the Peoria area until 2010. The court denied defendant's petition. Defendant appeals.

¶ 9                                II. ANALYSIS

¶ 10        Defendant argues on appeal that the court committed manifest error by denying his successive postconviction petition where he sufficiently established a claim of actual innocence that would change the outcome on retrial. Specifically, defendant's actual innocence claim derives from a new witness, Trapper, who, defendant contends, provided evidence that defendant could not have been the shooter. Defendant asserts that Trapper's testimony is newly discovered because she was unwilling to come forward sooner.

4

¶ 11    The Post-Conviction Hearing Act (Act) permits a criminal defendant to challenge the proceedings which resulted in his conviction by asserting that "there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2018). The Act contemplates the filing of a single postconviction petition. *People v. Robinson*, 2020 IL 123849, ¶ 42. A defendant must obtain leave of court to file a successive postconviction petition. *People v. Wrice*, 2012 IL 111860, ¶ 47; *Robinson*, 2020 IL 123849, ¶ 43; 725 ILCS 5/122-1(f) (West 2018). A defendant may obtain leave by alleging "a fundamental miscarriage of justice based on actual innocence." *Robinson*, 2020 IL 123849, ¶ 42 (citing *People v. Edwards*, 2012 IL 111711, ¶ 23). If the circuit court does not dismiss the successive postconviction petition at the first stage, the petition will proceed to the second stage. *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001). At the second stage, a defendant must make a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). If the State is unsuccessful in moving to dismiss the petition at the second stage, then the cause advances to a third-stage evidentiary hearing. *Id.* at 472. At the third-stage evidentiary hearing, the defendant must show by a preponderance of the evidence a substantial violation of a constitutional right. *People v. Coleman*, 2013 IL 113307, ¶ 92. The circuit court, as the finder of fact at the hearing, makes credibility determinations and weighs the evidence. *People v. Reed*, 2020 IL 124940, ¶ 51. Accordingly, we review a circuit court's ruling following a third-stage evidentiary hearing for manifest error.[1] *Id.* Manifest error is error that is "clearly evident, plain, and indisputable." (Internal quotation marks omitted.) *Id.* (quoting *Coleman*, 2013 IL 113307, ¶ 98, quoting *People v. Morgan*, 212 Ill. 2d 148, 155 (2004)).

---

[1]Defendant argues that we should review his claim *de novo*. As explained by the court in *Reed*, 2020 IL 124940, ¶¶ 13, 51, the standard of review is manifest error where the court heard new testimony. See *cf. People v. English*, 2013 IL 112890, ¶ 24 (During the third-stage hearing "the circuit court heard no new evidence; instead, the court reviewed the trial transcripts and heard arguments of counsel.").

¶ 12     To establish a claim of actual innocence, the evidence must be: (1) newly discovered; (2) material and not merely cumulative; and (3) of such a conclusive character that it would probably change the result on retrial. *Robinson*, 2020 IL 123849, ¶ 47. "Newly discovered evidence is evidence that was discovered after trial that the [defendant] could not have discovered earlier through the exercise of due diligence." *Id.*

¶ 13     First, we address whether Trapper's testimony is newly discovered evidence. Trapper's testimony established that she had known defendant for a "very long time," had grown up in the same neighborhood where their siblings were friends, and previously saw defendant "probably" 50 or 100 times. Upon hearing the gunshots, Trapper "instinctively," thought "where is [defendant]?" and proceeded to make eye contact with defendant to make sure he was not the victim of the shooting. The testimony established that Trapper and defendant knew one another, and Trapper was within defendant's view and in the same vicinity at the time of the crime. See *cf. People v. Ortiz*, 235 Ill. 2d 319, 334 (2009) (the witness indicated that he was in a place where he would not have been seen by defendant at the time of the crime, and thus, the court found that the witness was unknown to defendant and became an unavailable witness when he moved shortly after the crime). In this case, defendant holds the knowledge of facts pertaining to his alibi defense where the hearing testimony showed he was with Trapper at the time of the crime. See *Edwards*, 2012 IL 111711, ¶ 37 (witness affidavits were not considered newly discovered where defendant knew the witnesses who were with him the night of the crime and, by exercising due diligence, could have discovered and subpoenaed them to testify at trial).

¶ 14     Moreover, the record does not show any effort of due diligence by defendant to contact or subpoena Trapper for trial, who lived in the Peoria area at the time of defendant's trial and for approximately three years after. See *cf. People v. Burrows*, 172 Ill. 2d 169, 183 (1996) (the court

did commit manifest error in its factual determination that "defendant made genuine, but unsuccessful, efforts to locate [the witness] before [defendant] was tried and convicted," thus, the court considered the witness's testimony newly discovered). The *possibility* that defense counsel might not have been able to locate Trapper in time for trial is an insufficient basis to establish her testimony was newly discovered. See *id.*; see also *Edwards*, 2012 IL 111711, ¶ 37.

¶ 15    We reject defendant's argument that Trapper was unavailable for her failure to come forward sooner due to her fear of retribution. Initially, we note that defendant's focus for this contention is rooted in cases that rely on an individual's fifth amendment right in finding that no amount of due diligence could have produced the evidence at trial. See *cf. Edwards*, 2012 IL 111711, ¶ 38 (codefendant's testimony was "newly discovered" because "[n]o amount of diligence could have forced him to violate [his fifth amendment] right if he did not choose to do so"); *People v. Molstad*, 101 Ill. 2d 128, 135 (1984) (codefendant's testimony was newly discovered because defendant could not compel them to violate their fifth amendment right); *People v. Alexander*, 2014 IL App (2d) 120810, ¶ 27 (the court found that "even if defendant had discovered this information prior to trial, defendant could not have forced [the witness] to waive his fifth amendment right to avoid self-incrimination," thus, the witnesses' affidavit was newly discovered (internal quotations omitted)); see *cf. People v. Parker*, 2012 IL App (1st) 101809, ¶ 83 (because the codefendant's affidavit included statements of self-incrimination, the evidence could not have been discovered sooner through due diligence). While fear of retribution may establish unavailability of a witness in certain circumstances, defendant failed to satisfactorily support his contention that such fear is sufficient here to consider Trapper's testimony newly discovered evidence. See *People v. Rosalez*, 2021 IL App (2d) 200086, ¶ 126.

7

¶ 16 Further, the legitimacy of Trapper's fear of retribution is a credibility determination that is for the court as fact finder to decide. See *Reed*, 2020 IL 124940, ¶ 51. The circuit court here made credibility findings that while certain aspects of Trapper's testimony were credible, there were also aspects of her testimony that were not, leading it to conclude that her testimony could not overcome the overwhelming evidence against defendant. Based on our review of the record, we do not find this decision unreasonable.

¶ 17 For these reasons, Trapper's testimony is not newly discovered. See *id.* Because we find defendant's evidence is not newly discovered, we need not determine the remaining factors. See *Robinson*, 2020 IL 123849, ¶ 47. Accordingly, the court did not commit manifest error by denying defendant's successive postconviction petition.

¶ 18 III. CONCLUSION

¶ 19 The judgment of the circuit court of Peoria County is affirmed.

¶ 20 Affirmed.