# Illinois Official Reports

## Appellate Court

---

### *People v. House*, 2020 IL App (3d) 170655

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUMAR ANTOINE HOUSE, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-17-0655 |
| Filed | May 12, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 12-CF-254; the Hon. Paul P. Gilfillan, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and James Wozniak, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jodi Hoos, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, and Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Presiding Justice Lytton concurred in the judgment and opinion.<br>Justice Schmidt specially concurred, with opinion. |

## OPINION

¶ 1 Defendant, Jumar Antoine House, appeals from the second-stage dismissal of his postconviction petition. Defendant argues the circuit court erred in dismissing his petition because he made a substantial showing of actual innocence based on newly discovered evidence that another individual committed the charged offense. We reverse and remand.

¶ 2 I. BACKGROUND

¶ 3 In March 2012, the State charged defendant with attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2012)), aggravated battery with a firearm (*id.* § 12-3.05(e)(1)), and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). The case proceeded to a bench trial.

¶ 4 Peoria police officer Eric Esser testified that he was dispatched to Pounders, a night club in Peoria, on February 17, 2012, at 1:19 a.m. The dispatch reported that an individual had fired several gunshots in the area near the club. At the scene, Esser observed bullet holes in the trunk of a BMW and the windshield of a Honda parked on the street near the club. Around 3 a.m., Esser met Norman Gates, the owner of the BMW, at the hospital. Esser took photographs of a gunshot wound to Gates' shoulder.

¶ 5 The parties stipulated that Dr. Stephanie Kok removed a bullet from Gates' shoulder.

¶ 6 Peoria police officer Scott Bowers testified that he collected a bullet from the windshield of the Honda. Bowers also took custody of the bullet that was removed from Gates' shoulder.

¶ 7 Dave Remington testified that he owned a business that was located near the area where the gunshots were heard. Remington's business had video surveillance cameras around the building. The State introduced into evidence the video recordings from Remington's cameras. The video showed three men standing near a black BMW. The men ran down the street as a black man dressed in a black coat and black hat chased after them. The black man in the coat and hat pointed and fired what appears to be a handgun in the direction of the other three men.

¶ 8 Nicholas Pannell testified that he was at Pounders with Gates and Eddie Binion on the night of February 17, 2012. Around 1 a.m., the men left the club. After getting into Gates' BMW, Pannell saw defendant across the street from the club. Pannell and defendant did not like each other, and they exchanged "words." Defendant produced a firearm and fired several shots in the direction of Pannell, Gates, and Binion, and the men ran. Several minutes after the shooting, Pannell, Gates and Binion returned to the scene. At that time, the police had arrived. Pannell did not see Gates get shot, but Gates told Pannell that he had been shot. A few days after the shooting, Pannell spoke with a police officer and selected defendant's photograph from a photographic lineup. Pannell told the officer that defendant had fired the gunshots.

¶ 9 During the State's direct examination, Pannell acknowledged that he had a prior felony and misdemeanor conviction and was awaiting sentencing following his entry of a guilty plea to a charge of unlawful possession of a weapon by a felon.

¶ 10 Detective Timothy Moore testified that he met with Pannell several days after the shooting. Initially, Pannell told Moore that he did not see the shooting and that he was not in the area when the shooting occurred. However, when Moore told Pannell that he had video footage of the shooting, Pannell spoke about the shooting and identified defendant as the shooter from a photographic lineup.

¶ 11        Peoria police officer Scott Hulse testified that at approximately 3:30 a.m. on February 17, 2012, Hulse stopped defendant's vehicle. Hulse placed defendant under arrest for driving under the influence of alcohol. Hulse did not find any weapons on defendant or in his vehicle. The traffic stop was video recorded, and the State introduced the recording into evidence. The recording shows defendant standing outside of his vehicle with several officers nearby. Defendant is dressed in black-colored clothing, a black jacket, and a black hat.

¶ 12        Gates testified that he was with Pannell and Binion on February 17, 2012. After leaving the club, Gates heard gunshots. Gates did not see who fired the shots as he ran from the scene. Later, Gates spoke with a police officer as he attempted to retrieve his BMW from the scene. At that time, Gates did not realize that he had been shot. When Gates returned home and removed his coat, he noticed a gunshot wound to his shoulder. Gates also acknowledged that he had a prior felony conviction for unlawful possession of a weapon by a felon.

¶ 13        Defense counsel stipulated that defendant had a prior felony conviction, and defendant elected not to testify.

¶ 14        At the conclusion of Moore's testimony, the defense rested. The court found defendant guilty of all three charges. The court sentenced defendant to 33 years' imprisonment for attempted first degree murder and a concurrent term of 8 years' imprisonment for possession of a weapon by a felon. On direct appeal, we affirmed defendant's convictions and sentences. *People v. House*, 2014 IL App (3d) 130312-U.

¶ 15        On March 9, 2015, defendant filed a postconviction petition. The petition raised a claim of actual innocence based on newly discovered evidence contained in attached affidavits.

¶ 16        In an affidavit dated October 9, 2014, Mario Davis averred that he witnessed the shooting. Davis saw a man wearing a black hat and black jacket fire shots down the street. Davis said this man was not defendant.

¶ 17        In an affidavit dated October 10, 2014, Albert Price averred that "in the summer of June 17, 2011," Moore approached defendant and said that "he would do 'whatever' to send him back to prison."

¶ 18        In an affidavit dated September 2, 2014, Erika Gibson averred that defendant's attorney informed her before the trial that she was going to send a private investigator to investigate the witness, crime, scene, and the video recording. However, the attorney did not conduct this investigation.

¶ 19        In an affidavit dated October 20, 2014, Leola Green averred that she witnessed the shooting. Green said that the shooting "did not include" defendant.

¶ 20        In an affidavit dated October 9, 2014, Kenwaun Murray averred that Pannell told him "the reason he lied about [defendant] being involved in the shooting was because he couldn't do all the time that Peoria County was going to give him for his gun charge. So he took a plea deal for his testimony."

¶ 21        The State filed a motion to dismiss the petition. The State argued that the petition was legally deficient and did not address defendant's claim of actual innocence. The State filed with its motion an affidavit from Assistant State's Attorney Brian Fitzsimons. Fitzsimons averred that the State did not make an offer to Pannell in exchange for his testimony in the instant case.

¶ 22        On May 12, 2017, the State filed an amended motion to dismiss. In this motion, the State argued that the affidavits attached to the petition did not support the allegations of ineffective

assistance of counsel, were immaterial, and were insufficient to have changed the outcome of the case.

¶ 23   On July 31, 2017, defendant filed a response to the State's amended motion to dismiss his postconviction petition. Regarding the affidavits, the motion stated "[t]he [a]ffidavits attached to the petitions support allegations of ineffectiveness of [c]ounsel and are in fact material and significant enough to have changed the outcome of [defendant's] trial."

¶ 24   On September 22, 2017, defendant filed an affidavit from Corey Hunter. Hunter averred that he witnessed the February 17, 2012, shooting. Hunter saw a man pull up in black car, walk by his location, and fire a weapon in the direction of some men who were standing outside Pounders. The shooter wore black clothing. Hunter saw the shooter's face and could identify him, but he did not provide a name or description. Hunter said that he knew "for a fact that it wasn't [defendant] that did this." Hunter did not come forward sooner because he did not want to be involved in the case.

¶ 25   After hearing the parties' arguments, the court entered a written order that granted the State's motion to dismiss the petition. Defendant appeals.

II. ANALYSIS

¶ 27   Defendant argues that the court erred in dismissing his postconviction petition at the second stage of proceedings because he made a substantial showing of actual innocence based on newly discovered evidence that another individual committed the crime. After reviewing the record, we find that defendant's pleadings made a substantial showing of actual innocence, and the court erred in granting the State's motion to dismiss.

¶ 28   The Post-Conviction Hearing Act provides a three-stage proceeding through which a criminal defendant may challenge a perceived violation of his constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2014). To advance from the second to the third stage of proceedings, the amended petition must make a substantial showing of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). At the second stage, the State may either answer defendant's pleading or move to dismiss it. 725 ILCS 5/122-5 (West 2014). Where the State moves to dismiss the petition, the court rules only on the legal sufficiency of the defendant's allegations. *People v. Domagala*, 2013 IL 113688, ¶ 35. At the second stage, the court must take all well-pleaded facts that are not positively rebutted by the record as true. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). "The question raised in an appeal from an order dismissing a postconviction petition at the second stage is whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act." *People v. Sanders*, 2016 IL 118123, ¶ 31. As there are no factual determinations at this stage, we review the dismissal of defendant's postconviction petition *de novo*. *Id.*

¶ 29   For a claim of actual innocence to advance to a third-stage evidentiary hearing, the petition and supporting documents must make a substantial showing that the evidence is (1) newly discovered, (2) material and not merely cumulative, and (3) of such conclusive character that it would probably change the result on retrial. *Id.* ¶ 46. We first determine whether defendant established that the evidence was newly discovered.

¶ 30   Newly discovered evidence is " 'evidence that was unavailable at trial and could not have been discovered sooner through due diligence.' " *People v. Edwards*, 2012 IL 111711, ¶ 34

(quoting *People v. Harris*, 206 Ill. 2d 293, 301 (2002)). We initially find that each affidavit[1] was made between September 2014 and September 2017, more than a one year after defendant's trial had concluded. The dating indicates that the information contained in the affidavits was generally undiscoverable until after the trial had concluded and the affiants were ready to speak. See, *e.g.*, *People v. Alexander*, 2014 IL App (2d) 120810, ¶ 27. Additionally, Hunter's affidavit specifically explained that he did not provide the information sooner because he was reluctant to be involved in the case. Moreover, there is no indication in the record from either the State's witness disclosures or defendant's filings that these witnesses were available and willing to testify at trial. Ultimately, the reason for the affiants' delay in making their statement is a matter to be addressed during a third-stage evidentiary hearing. See *People v. Lofton*, 2011 IL App (1st) 100118, ¶ 37. Therefore, taking the allegations in these affidavits and statements in the petition as true, defendant has made a substantial showing that the evidence was newly discovered.

¶ 31     The second requirement is that the evidence must be material and not cumulative. "Material means the evidence is relevant and probative of the petitioner's innocence. [Citation.] Noncumulative means the evidence adds to what the jury heard." *People v. Coleman*, 2013 IL 113307, ¶ 96. The State does not dispute that the affidavits of Hunter, Davis, and Green are material and noncumulative. The State solely argues that Murray's affidavit is not material. However, Murray's statement that Pannell, the sole eyewitness to the shooting, recanted his statement is relevant and probative of defendant's innocence. At trial, Pannell was the sole witness to identify defendant as the shooter. Taking the allegations in Murray's affidavit as true, the affidavit indicates that Pannell had motivation to falsely identify defendant as the shooter. Therefore, it is material to the determination of defendant's innocence as it rebuts Pannell's accusation.

¶ 32     Finally, we consider whether defendant made a substantial showing that the newly discovered evidence was of such a conclusive character that it would probably change the result on retrial. "[C]onclusive means the evidence, when considered along with the trial evidence, would probably lead to a different result." *Id.* The evidence of defendant's guilt came from the surveillance video and Pannell's testimony that he saw defendant fire the gunshots. The surveillance video provides a limited view of the shooter. All that can be seen in the low light of the video is a black male wearing black clothing run across the field of view while holding an object that appears to be a firearm. The lighting and camera angle make identification of the shooter from the video nearly impossible, as the shooter's face and other defining features are not readily visible. As a result, the direct identification of the shooter turns on Pannell's testimony and pretrial lineup identification. Murray's affidavit directly calls Pannell's identification into question, as Murray averred that Pannell had lied about defendant's involvement in the shooting to obtain a favorable plea deal in his pending case. Moreover, Davis, Green, and Hunter each averred that they saw the shooter and that the shooter was not defendant. Thus, these affidavits further refute Pannell's identification testimony and possess the potential to lead to a different result.

---

[1]While Gibson's affidavit was made during this period, the parties do not contest its relevance to defendant's claim of actual innocence. Ultimately, Gibson's affidavit does not provide any information in furtherance of defendant's claim of actual innocence.

¶ 33    Viewing the affidavits together and liberally construing them in favor of defendant, we conclude that defendant made a substantial showing of actual innocence and that the court erred in dismissing his petition at the second stage. Accordingly, we reverse the circuit court's dismissal and remand the cause for a third-stage evidentiary hearing.

¶ 34                                    III. CONCLUSION
¶ 35    The judgment of the circuit court of Peoria County is reversed and remanded.

¶ 36    Reversed and remanded.

¶ 37    JUSTICE SCHMIDT, specially concurring:
¶ 38    I concur in the judgment.