NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190029-U

NO. 4-19-0029

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 23, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| AARON P. STULL, | ) | No. 11CF262 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Ryan M. Cadagin, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1 *Held:* The appellate court reversed the trial court's order that granted postconviction counsel's motion to withdraw because the postconviction petition made a substantial showing of a constitutional violation.

¶ 2 In March 2011, the State charged defendant, Aaron P. Stull, with three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008)) and one count of aggravated criminal sexual abuse (*id.* § 12-16(b)). In April 2012, a jury found defendant guilty of all four counts. In July 2012, the trial court sentenced defendant to consecutive terms of 15, 15, 15, and 4 years in prison. Defendant appealed, and this court affirmed his convictions and sentences. *People v. Stull*, 2014 IL App (4th) 120704, ¶ 108, 5 N.E.3d 328.

¶ 3 In July 2014, defendant *pro se* filed a petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). Defendant alleged—among other things—ineffective assistance of trial and appellate counsel. In October

2014, the trial court advanced the petition to the second stage and appointed counsel to represent defendant on his petition. Later in October 2014, the State filed a motion to dismiss.

¶ 4    In November 2018, postconviction counsel filed a motion to withdraw. In December 2018, the trial court granted counsel's motion to withdraw over defendant's objection. The court also denied defendant's request to appoint new counsel and then granted the State's motion to dismiss defendant's postconviction petition.

¶ 5    Defendant appeals, arguing, among other things, that the trial court erred by granting postconviction counsel's motion to withdraw and the State's motion to dismiss because the postconviction petition made a substantial showing of a constitutional violation on at least two claims: (1) actual innocence based on the victim's recantation and (2) ineffective assistance of counsel for failing to investigate a witness. We agree, reverse the trial court's dismissal, and remand for third-stage proceedings.

¶ 6                          I. BACKGROUND

¶ 7    We begin by noting that this court engaged in a detailed accounting regarding defendant's jury trial and pretrial proceedings. See *Stull*, 2014 IL App (4th) 120704, ¶¶ 3-38. Accordingly, we discuss only the information necessary for an understanding of the issues in this appeal.

¶ 8                          A. Procedural History

¶ 9    In March 2011, the State charged defendant with three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008)) and one count of aggravated criminal sexual abuse (*id.* § 12-16(b)). Specifically, the State alleged that defendant engaged in sexual misconduct with his then-six-year-old daughter, E.S., between August 2009 and May 2010.

¶ 10        In April 2012, the trial court conducted defendant's jury trial at which E.S.

testified that defendant (1) put his penis inside her buttocks and mouth and (2) licked her vagina.

E.S. also testified that her older brother, C.S., had touched her vagina. E.S. stated that on one

occasion, C.S. observed their parents having sex through a crack in the bedroom door and C.S.

then told E.S. that he wanted to do the same things with her. However, their mother pulled C.S.

off of E.S. when C.S. tried to do so.

¶ 11        Pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS

5/115-10 (West 2010)), the State also introduced prior statements made by E.S. to a teacher and

a counselor at her school that described the sexual assaults committed by defendant. A forensic

interviewer spoke with E.S. twice, and the State played the video recordings of those interviews.

¶ 12        Defendant presented evidence from a Department of Children and Family

Services (DCFS) employee who conducted a home visit at E.S.'s residence. E.S. told the DCFS

worker "[i]t was [C.S.] who did that stuff to me anyway." E.S. clarified that by "that stuff" she

meant C.S. putting his penis in her buttocks. The DCFS worker also testified that E.S.'s mother

and grandmother had expressed doubts about E.S.'s claims and the mother later called and

reported to the worker that she believed C.S. had committed the abuse because she saw C.S.

commit sexual acts with E.S.

¶ 13        The jury convicted defendant of all four counts. In July 2012, the trial court

sentenced defendant to consecutive terms of 15, 15, 15, and 4 years in prison. On direct appeal,

this court affirmed defendant's convictions and sentences. *Stull*, 2014 IL App (4th) 120704,

¶ 108.

¶ 14                        B. The Postconviction Petition

¶ 15        In July 2014, defendant *pro se* filed a postconviction petition in which he alleged

several deprivations of his constitutional rights including ineffective assistance of counsel. Relevant to this appeal, defendant asserted a claim of actual innocence, which he supported by attaching an affidavit from E.S. That affidavit stated, "My dad is innocent he di[d]n't do anything. My brother [C.S.] use to touch me." E.S. further wrote in the affidavit that her teacher "changed my story" and her testimony was influenced by people at the Child Advocacy Center (CAC). We note that although E.S.'s affidavit was not dated, it first appeared in the record in July 2014, when it was attached to defendant's postconviction petition.

¶ 16 Defendant also asserted that his trial counsel was ineffective for failing to investigate two potential defense witnesses and present their testimony at trial. Defendant stated his wife, Tabitha S., and his mother, Barbara M., were never contacted by trial counsel. Defendant attached their affidavits, which generally provided support that (1) E.S. told stories to get attention, (2) C.S. engaged in inappropriate behavior with E.S., and (3) defendant was never alone with the children because Barbara was the primary caretaker and lived in the home.

¶ 17 In October 2014, the trial court appointed William Davis as postconviction counsel and advanced the petition to the second stage. Later that month, the State filed a short motion to dismiss, arguing that defendant's claims were barred by *res judicata*, insufficiently pleaded, and unsupported by the record.

¶ 18 The docket sheet indicates that nothing was filed and no hearings were held between December 2014 and April 2018.

¶ 19 C. The Motion To Withdraw

¶ 20 In April 2018, defendant filed a motion for new counsel and a supplemental postconviction petition. Defendant requested new counsel because he had received a letter from postconviction counsel in December 2017, stating counsel could not find any constitutional

- 4 -

issues that could be raised and enclosed a copy of his motion to withdraw. Defendant's supplemental petition elaborated on the claims he had included in his original petition by including portions of the report of proceedings and additional legal argument. In May 2018, the trial court made a docket entry noting receipt of the filings and forwarding copies to the attorneys of record.

¶ 21 In November 2018, postconviction counsel filed a motion to withdraw in which counsel (1) indicated defendant had filed a postconviction petition in July 2014 and (2) listed the nine claims asserted in that original petition. The motion did not refer to defendant's supplemental petition. Regarding defendant's actual innocence claims, counsel asserted that none of the affidavits attached to the petition constituted newly discovered evidence. Citing *People v. Edwards*, 2012 IL 111711, ¶ 33, 969 N.E.2d 829, counsel contended that because E.S. testified at trial, her affidavit could not be considered newly discovered.

¶ 22 Regarding the claim of ineffective assistance of counsel, postconviction counsel concluded that trial counsel's decision not to call Tabitha or Barbara to testify was a matter of trial strategy, which is generally immune from attack. Postconviction counsel's motion to withdraw stated, "From review of the record, trial counsel's defense strategy in the case was based on raising reasonable doubt in the minds of the jurors through opening and closing statements, and the cross-examination of witnesses." Postconviction counsel maintained that "[t]rial counsel's strategy would not have been advanced" by calling Tabitha and Barbara because "many, if not all, of the points they could have raised were already raised by other witnesses ([defendant]), or were determined by trial counsel as irrelevant to the reasonable doubt of [defendant's] guilt." Postconviction counsel did not explain how he discerned that trial counsel determined their testimony was "irrelevant," but did note that the State could have

- 5 -

impeached them with their obvious bias. Most important, postconviction counsel made no mention whatever of defendant's claim that trial counsel failed to investigate or interview Tabitha or Barbara.

¶ 23                                      D. The Trial Court's Rulings

¶ 24            In December 2018, the trial court conducted a hearing on postconviction counsel's motion to withdraw. Counsel explained why he believed the allegations in the petition were in fact frivolous and patently without merit. Counsel noted that affidavits from E.S., Tabitha, and Barbara were available at the time of trial and trial counsel's decision not to call Tabitha or Barbara was a matter of trial strategy. Defendant objected, argued that E.S.'s affidavit and the information contained therein could not have been obtained prior to trial, and clarified that counsel was ineffective for failing to investigate witnesses, not just for failing to call them. The trial court granted the motion to withdraw over defendant's objection and without explanation.

¶ 25            The trial court then conducted a hearing on the State's motion to dismiss. The State adopted the arguments set forth in postconviction counsel's motion to withdraw. The trial court granted the motion to dismiss again with no explanation.

¶ 26            This appeal followed.

¶ 27                                      E. Other Proceedings

¶ 28            We note that in 2019, defendant filed (1) a motion for leave to file a successive postconviction petition and (2) a petition for relief from judgment. The trial court dismissed those pleadings, and this court recently affirmed on appeal the dismissal of those pleadings. *People v. Stull*, No. 4-19-0799 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 29                              II. ANALYSIS

¶ 30      Defendant appeals, arguing, among other things, that the trial court erred by granting postconviction counsel's motion to withdraw and the State's motion to dismiss because the postconviction petition made a substantial showing of a constitutional violation on at least two claims: (1) actual innocence based on the victim's recantation and (2) ineffective assistance of counsel for failing to investigate a witness. We agree, reverse the trial court's dismissal, and remand for third-stage proceedings.

¶ 31                  A. The Standard of Review and Applicable Law

¶ 32      The Act provides a criminal defendant the means to redress substantial violations of his constitutional rights that occurred in his original trial or sentencing. *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 23, 38 N.E.3d 1256; 725 ILCS 5/122-1 (West 2014). The Act contains a three-stage procedure for relief. *People v. Allen*, 2015 IL 113135, ¶ 21, 32 N.E.3d 615; 725 ILCS 5/122-2.1 (West 2014). Within the first 90 days after the petition is filed and docketed, the trial court shall dismiss a petition summarily if the court determines it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2014). If the petition is not dismissed as being frivolous or patently without merit, then the trial court (1) orders the petition to be docketed for further consideration and (2) appoints counsel if the petitioner is indigent and so requests. *Id.* § 122-2.1(b).

¶ 33      At the second stage, counsel must then investigate defendant's claims and make any amendments necessary for an adequate presentation thereof. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). The State may file a motion to dismiss the petition, and the petition advances to a third-stage evidentiary hearing only if defendant's pleadings make a "substantial showing of a constitutional violation." *People v. Buffer*, 2019 IL 122327, ¶ 45, 137 N.E.3d 763.

¶ 34    The Illinois Supreme Court has described proceedings at the second stage as follows:

> "The second stage of postconviction review tests the legal sufficiency of the petition. Unless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or 'show' a constitutional violation. In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767.

"The question raised in an appeal from an order dismissing a postconviction petition at the second stage is whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act." *People v. Sanders*, 2016 IL 118123, ¶ 31, 47 N.E.3d 237. An appellate court reviews the dismissal of a petition at the second stage *de novo*. *People v. House*, 2020 IL App (3d) 170655, ¶ 28, 152 N.E.3d 574.

¶ 35                                  B. Actual Innocence

¶ 36    Defendant first argues that his petition made a substantial showing of actual innocence that entitled him to a third-stage hearing. We agree.

¶ 37                                  1. *The Law*

¶ 38    The Illinois Supreme Court recently described how actual innocence claims are evaluated, as follows:

> "To establish a claim of actual innocence, the supporting evidence must be

- 8 -

(1) newly discovered, (2) material and not cumulative, and (3) of such a conclusive character that it would probably change the result on retrial. [Citations.] Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence. [Citation.] Evidence is material if it is relevant and probative of the petitioner's innocence. [Citation.] Noncumulative evidence adds to the information that the fact finder heard at trial. [Citation.] Lastly, the conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result." *People v. Robinson*, 2020 IL 123849, ¶ 47.

¶ 39     The supreme court described the "conclusive-character" element as follows: "As previously noted, the new evidence supporting an actual innocence claim need not be entirely dispositive to be likely to alter the result on retrial. [Citation.] Rather, the conclusive-character element requires only that the petitioner present evidence that places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id.* ¶ 56. "[T]he well-pleaded allegations in the petition and supporting documents will be accepted as true unless it is affirmatively demonstrated by the record that a trier of fact could never accept their veracity." *Id.* ¶ 60.

¶ 40                                  2. *This Case*

¶ 41     We conclude that the petition should have been advanced to a third-stage hearing based on the supreme court's holding in *Robinson*, 2020 IL 123849, ¶ 60. The statements in E.S.'s affidavit were unequivocal that her brother, and not her father, committed the acts of sexual abuse. The affidavit further explained why E.S. testified differently at trial.

- 9 -

¶ 42          Contrary to the State's claims, the affidavit was new, noncumulative, and of a conclusive character, as the supreme court recently explained that term in *Robinson*. *Id.* ¶ 56. Further, defendant could not have discovered E.S.'s recantation prior to defendant's trial because it was not written until the trial was over. The affidavit first appeared in the record in July 2014 when defendant *pro se* filed his postconviction petition. Accordingly, the affidavit was newly discovered.

¶ 43          Further, the evidence was material and noncumulative. E.S. stated in her interviews and at trial that both defendant and C.S. sexually abused her, but in her affidavit, E.S. was unequivocal for the first time that defendant did not. Therefore, her affidavit was not cumulative.

¶ 44          The affidavit also provided an explanation for why E.S. testified falsely at trial. Such evidence may be considered when evaluating E.S.'s credibility both at trial and in her interviews. E.S. also claimed her teacher "changed [E.S.'s] story" and the people at the CAC were not being truthful. Finally, her statements, taken as true, are of such a character that the result of the trial could have been different. Defendant does not need to prove by a preponderance of the evidence that the outcome would have been different to survive the second-stage of proceedings.

¶ 45          Accordingly, we conclude that (1) defendant's petition made a substantial showing of actual innocence and (2) the trial court erred by granting counsel's motion to withdraw and dismissing defendant's petition.

¶ 46                              C. Proceedings on Remand

¶ 47          Defendant made other claims of constitutional violations in his *pro se* postconviction petition and his supplemental petition. For instance, defendant contends that he

made a substantial showing that his trial counsel was ineffective for failing to investigate Barbara, who would have provided exculpatory testimony. We need not address defendants remaining claims because we conclude that the trial court should have advanced the petition to the third stage on at least one claim. Normally, we would remand for further second-stage proceedings, but judicial economy in this case requires a different outcome.

¶ 48        Both the trial court and postconviction counsel permitted this case to languish in the trial court for almost four years before finally addressing defendant's claims. Postconviction counsel in particular has no excuse for his course of conduct. Counsel's requests for fees show that he completed reviewing the file at the end of 2015. However, he took all of 2016 to review the entire file again. At that point, counsel apparently concluded a motion to withdraw was appropriate, and he had a colleague take all of 2017 to review the file yet again and draft that motion. It is unclear why counsel did not reach this determination on the completion of his first review. When counsel finally notified defendant of his intention to withdraw, he provided a draft of the motion but inexplicably waited 11 months before actually filing it. And, despite counsel's claim that he thoroughly reviewed defendant's petition over a period of years, counsel missed at least one viable claim.

¶ 49        The trial court should have required postconviction counsel to act quicker. Trial courts have great discretion to control their dockets and should not let cases linger, as this case did, for years without any progress while defendants remain incarcerated. (We note that the trial judge whose name is listed as the presiding judge in this case only recently had this case assigned to him.)

¶ 50        Defendant was convicted of sexually abusing his six-year-old daughter. At trial, E.S. was eight years old. When E.S. wrote her affidavit, she was 10. At this time, E.S. is age 16.

She should have received closure on this case a long time ago.

¶ 51     Likewise, defendant had to wait in prison for four years before he got the chance to argue the merits of his claims. Due to the passage of time, the State may have a difficult time retrying defendant if he establishes on remand that he is entitled to a new trial. Further, although we express no opinion as to the ultimate merits of defendant's actual innocence claim, if that claim were to be successful, the extraordinary delays in this case would be unconscionable.

¶ 52     Accordingly, we direct on remand that (1) the trial court appoint new counsel for defendant, (2) new counsel may amend the postconviction petition in any manner counsel deems appropriate, and (3) the trial court conduct an evidentiary hearing on defendant's claims. When doing so, the trial court should first consider defendant's claim of actual innocence and permit him to present any evidence that is relevant to that claim. In the event that the court concludes that defendant met his burden of proof on that claim, it should then order a new trial for defendant, and his remaining claims need not be addressed.

¶ 53     If defendant fails to meet his burden of proof regarding his claim of actual innocence, then the trial court should conduct an evidentiary hearing on any remaining claims, including, for instance, his ineffective assistance of counsel claim discussed in this appeal, as well as set forth in defendant's petition and any other claim set forth by new counsel in an amended postconviction petition.

¶ 54     Because of the unconscionable delay and unique circumstances of this case, we wish to clarify that all further proceedings are to be third-stage evidentiary hearings. Accordingly, no motions to dismiss by the State should be accepted by the trial court.

¶ 55     We express no view on the ultimate merits of defendant's claims or what action new postconviction counsel should take.

¶ 56        In closing, we thank the assistant appellate defender for her detailed and well-reasoned brief.

¶ 57                        III. CONCLUSION

¶ 58        For the reasons stated, we reverse the trial court's judgment and remand the case for further proceedings consistent with this order.

¶ 59        Reversed and remanded with directions.