**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190316-U

Order filed November 18, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0316 Circuit No. 01-CF-17 |
| JARVIS JACKSON, | ) ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court.
Justices Daugherity and O'Brien concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant failed to make a substantial showing that the evidence attached to his successive postconviction petition is newly discovered, material and not merely cumulative, and of such conclusive character that it would probably change the result on retrial. Defendant also failed to establish the prejudice necessary to mount a successful ineffective assistance of counsel claim.

¶ 2    Following a plea of guilty to two counts of first degree murder, defendant, Jarvis Jackson, initiated extensive postconviction proceedings. In May 2019, the circuit court granted the State's motion to dismiss defendant's 2018 amended successive postconviction petition following

second-stage proceedings under the Post-Conviction Hearing Act (the Act). 725 ILCS 5/122-1 *et seq.* (West 2018). Defendant appeals.

¶ 3                                    I. BACKGROUND

¶ 4        In January 2001, the State charged defendant with two counts of first degree murder pursuant to section 9-1(a)(3) of the Criminal Code of 1961. 720 ILCS 5/9-1(a)(3) (West 2000). The charges stemmed from the murder of two victims during the course of a robbery. Prior to accepting defendant's guilty plea to the charges, the circuit court conducted a hearing on defendant's motion to suppress his videotaped confessions. During the hearing, detectives denied using coercive tactics to secure defendant's confessions, despite defendant's testimony to the contrary. The court denied defendant's motion to suppress, finding that his confessions were not the product of coercion.

¶ 5        On May 24, 2001, defendant plead guilty to both counts of murder. In exchange for the State's agreement to waive its right to seek the death penalty, defendant agreed to testify at his codefendants', Johns and Echols's, future trials. This court recounted the factual basis of defendant's guilty plea in *People v. Jackson*, No. 3-06-0702 (2008) (unpublished order under Illinois Supreme Court Rule 23) (*Jackson* I). Defendant was sentenced to natural life in prison.

¶ 6        In *Jackson* I, this court considered the dismissal of defendant's initial postconviction petition, filed in 2006. This court was asked to consider defendant's claim of actual innocence and his claim that he was denied effective assistance of counsel. Defendant argued plea counsel failed to investigate exculpatory evidence, including the statements of the sole eyewitness and the initial charges levied against another individual in the case. Our ruling in *Jackson* I provided that defendant's citations to police reports and the grand jury transcripts relating to the investigation and indictment of Michael Young were improper, where this evidence was

2

available prior to defendant tendering his guilty plea. This court further rejected defendant's ineffective assistance claim, stating:

> "The record here shows that defendant gave a videotaped confession in which he admitted to shooting and killing both [the victims]. Moreover, Pat Rabe, the detective who took defendant's confession, testified that Douglas, Jr., erroneously identified Young, who was very similar in height, weight and complexion to defendant. Rabe stated that Young was known as Big Mike, and Dwaine Johns was known as Big Folks, so there could have been some confusion at the apartment when someone yelled Big Folks. Thus, even if counsel were to investigate the evidence pertaining to the indictment of Michael Young, we do not believe the result of the proceeding, had defendant chosen to go to trial, would have been different given defendant's confession and Rabe's testimony." (Internal quotation marks omitted.)

¶ 7 Thereafter, extensive postconviction proceedings ensued and were documented by this court in *People v. Jackson*, No. 3-09-0569 (2010) (unpublished order under Illinois Supreme Court Rule 23) and *People v. Jackson*, 2015 IL App (3d) 130575. Recently, in *Jackson*, 2015 IL App (3d) 130575, this court reversed the dismissal of defendant's successive postconviction petition (2009 successive petition), originally filed on July 21, 2009. Without reaching the merits of defendant's postconviction claims, this court remanded the case for further proceedings.

¶ 8 Following remand, defendant filed a *pro se* amended successive postconviction petition (2018 successive petition) on July 30, 2018. In the 2018 successive petition, defendant provided that he gave a videotaped confession, wherein he admitted to shooting the victims as part of a robbery carried out by defendant, Johns, and Echols. However, defendant asserted that his statements to the police concerning the robbery and the shooting were not credible and that

3

several key pieces of evidence pointed to another possible suspect. Specifically, defendant referenced the statements of a five-year-old eyewitness, reports police received from neighbors, footprints discovered at the scene, wiretap conversations that "yielded no inculpatory evidence," and a witness statement that the shooter wore prescription glasses. Based on this alleged exculpatory evidence, defendant asserted actual innocence, along with asserting that his guilty plea was involuntary, where plea counsel coerced him to enter a guilty plea. Defendant further asserted that plea counsel was ineffective for failing to disclose this exculpatory evidence, where defendant had a viable defense to the charges.

¶ 9 In support of his assertions, defendant attached multiple police/incident reports documenting the investigation. Defendant also attached the affidavits of Johns, Echols, defendant, and defendant's father (Steele). The affidavits of codefendants Johns and Echols mirror one another. In their affidavits, both Johns and Echols recant their prior statements about their involvement in the victims' murders. Contrary to their prior statements, Johns and Echols asserted that they did not agree to commit a robbery with defendant and were not present when either victim was murdered. Johns and Echols asserted that their prior statements were coerced through physical and verbal threats by investigators.

¶ 10 Defendant's affidavit also asserted that investigators utilized coercive tactics to elicit a confession. Defendant further asserted that plea counsel failed to inform him of the alleged exculpatory evidence, and that had counsel done so, defendant would not have plead guilty. Lastly, defendant recanted his prior statements that he, Johns, and Echols participated in the murder of the victims. Steele's affidavit generally averred that in 2010, defendant and Steele attempted to contact plea counsel to have plea counsel sign an affidavit prepared by defendant.

4

¶ 11 During a hearing on October 5, 2018, the parties discussed the fact that defendant filed his 2018 successive petition without first withdrawing the 2009 successive petition. At this time, the court stated: "[m]y suggestion is to dismiss with prejudice the 2009 [successive] petition, in light of the 2018 [successive] petition having been filed." The court's written order indicated that defendant withdrew the 2009 successive petition in order to proceed on the 2018 successive petition.

¶ 12 On January 4, 2019, the State filed a motion to dismiss both the 2018 successive petition and the 2009 successive petition. The State's motion to dismiss argued defendant was not allowed to supplement or amend his 2009 successive petition on remand. Substantively, the State argued the evidence attached to the petition and/or petitions was not newly discovered and did not establish actual innocence. The State also argued defendant could not establish ineffective assistance of counsel, where counsel's investigation into matters set forth in the petitions would not reasonably alter the outcome of the proceeding.

¶ 13 On February 19, 2019, defendant filed a response to the State's motion to dismiss. Defendant asserted that he added two additional claims to the 2018 successive petition, relative to the claims set forth in the 2009 successive petition. The additional claims were that defendant had a viable defense to the charges and that the plea admonishments were insufficient to cure counsel's ineffectiveness.

¶ 14 On May 31, 2019, the court conducted a hearing on the State's second-stage motion to dismiss. At the outset, the State again asserted its belief that defendant did not have the right to amend the 2009 successive petition by filing the 2018 successive petition. Nonetheless, the State addressed both successive petitions and argued the petitions were without merit. Following the hearing, the court granted the State's second-stage motion to dismiss both the 2009 successive

5

petition and the 2018 successive petition, finding that the 2018 successive petition merely amplified the 2009 successive petition. The court specifically found that several of the issues raised in defendant's successive petitions were previously litigated and denied in *Jackson* I. Defendant appeals.

¶ 15                                      II. ANALYSIS

¶ 16          On appeal, defendant argues the circuit court improperly dismissed the 2018 successive petition and urges this court to remand his case for a third-stage evidentiary hearing. Defendant asserts that the 2018 successive petition included an allegation of newly discovered, material, non-cumulative evidence, that made a substantial showing that defendant was actually innocent of the crimes for which he plead guilty and that a retrial would probably result in acquittal. Additionally, defendant asserts that plea counsel was ineffective for advising defendant to plead guilty without first disclosing discovery to defendant or adequately investigating the prior arrest of another suspect for these crimes. The State argues the 2018 successive petition failed to allege the gist of a constitutional claim of actual innocence and failed to make a substantial showing that plea counsel provided ineffective assistance of counsel.

¶ 17          Before addressing defendant's postconviction claims of actual innocence and ineffective assistance, we consider whether the 2009 or 2018 petition is subject to our review. During oral argument, the parties agreed the 2018 successive petition is the only pending petition subject to our review.[1]

¶ 18          The Act offers criminal defendants a mechanism to mount a collateral attack on a final judgment by asserting that in the proceedings which resulted in his or her conviction, there was a

_____

[1]It is worth noting that since the 2009 successive petition is substantially similar to the 2018 successive petition, even if we ignored the 2018 successive petition and focused on the contents of the 2009 successive petition, the outcome of this appeal would not change.

6

substantial denial of his or her rights under the Constitution of the United States or the State of Illinois or both. See *People v. Robinson*, 2020 IL 123849, ¶ 42. The Act contemplates the filing of a single postconviction petition. *People v. Coleman*, 2013 IL 113307, ¶ 81. However, the bar against filing successive postconviction petitions is relaxed, where the defendant asserts a fundamental miscarriage of justice based on actual innocence. *Robinson*, 2020 IL 123849, ¶ 42.

¶ 19        The Act sets forth a three-stage process for reviewing postconviction claims. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). Once a postconviction petition advances past the first stage, the circuit court must determine whether the petition, and any accompanying documentation, makes a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 33. At this stage, unless the allegations set forth in the petition are affirmatively refuted by the record, they are taken as true, and the question becomes whether those allegations establish a constitutional violation. *Id.*, ¶ 35. To advance an actual innocence claim to a third-stage evidentiary hearing, a defendant must plead a substantial showing that the evidence is newly discovered, material and not merely cumulative, and of such conclusive character that it would probably change the result on retrial.[2] *People v. House*, 2020 IL App (3d) 170655, ¶ 29. *People v. Sanders*, 2016 IL 118123, ¶ 46. This court reviews *de novo* whether a postconviction petition was erroneously dismissed without a third-stage evidentiary hearing. *Id.*, ¶ 31.

¶ 20                    A. 2006 Postconviction Petition

¶ 21        The record establishes that defendant's original postconviction petition was submitted to the circuit court and summarily dismissed in 2006 as frivolous and patently without merit. In

---

[2]This court is cognizant of the State's citation to the evidentiary standard set forth in *Reed*, wherein defendants who plead guilty and bring actual innocence claims are required to provide "new, material, noncumulative evidence that *clearly and convincingly* demonstrates that a trial would probably result in acquittal." (Emphasis added.) *People v. Reed*, 2020 IL 124940, ¶ 49. Though the *Reed* decision is not entirely clear, it appears our supreme court developed this evidentiary standard for third-stage evidentiary hearings, making the standard inapplicable here. See *id.*, ¶ 65.

*Jackson* I, this court upheld the dismissal of the 2006 postconviction petition. Although our court observed that the circuit court's ruling could be affirmed due to the deficiency in the attached, but unnotarized, affidavits, the court expressly declined to affirm the circuit court's dismissal based on that narrow procedural approach. Instead, the court considered the undisputed fact that, prior to defendant's arrest, another person had been arrested for the same murders. Ultimately, our court held that the arrest of another suspect was known information, available to defendant, prior to the court's approval of the negotiated guilty plea. Consequently, our court held that we could not consider defendant's citations to police reports and the grand jury transcripts relating to the investigation and indictment of Michael Young.

¶ 22        In addition, the 2006 postconviction petition alleged defendant was denied effective assistance of counsel because plea counsel failed to investigate exculpatory evidence, including the arrest of another person for the murders, based on the statements and the identification of another suspect by a five-year-old eyewitness. This court held in *Jackson* I that defendant did not establish the prejudice prong necessary for a successful ineffective assistance claim. The court reasoned that defendant's videotaped confession, as well as Rabe's testimony discrediting the witness's identification of the shooter, foreclosed on the possibility that if defendant had not entered a guilty plea, the result of the trial would have been different.

¶ 23                                    B. 2018 Successive Petition

¶ 24        In his 2018 successive petition, defendant alleges, once again, the ineffective assistance of plea counsel, arguing that by failing to show defendant relevant portions of the discovery, counsel failed to ensure that defendant's plea was entered knowingly and voluntarily. We note that the State has not asserted that our 2008 decision in *Jackson* I constitutes *res judicata* and bars defendant from relitigating this issue. Without addressing the application of *res judicata*, we

8

independently conclude, after reviewing this record *de novo*, that defendant has not established plea counsel's purported ineffectiveness resulted in prejudice.

¶ 25     Importantly, in 2006, the circuit court found that defendant voluntarily confessed to the murders, following the hearing on defendant's pretrial motion to suppress. Hence, as Justice McDade held in *Jackson* I, this confession, coupled with Rabe's testimony, made it extremely unlikely that the outcome of the trial would have been different if defendant had elected to maintain his not guilty plea. In addition, after defendant's guilty plea, the record reveals the two codefendants testified in each of their respective jury trials that defendant was the only adult present when each victim was shot. Defendant also testified during each codefendant's trial that he was the person who shot each of the victims. Finally, after carefully reviewing the affidavits of defendant, Johns, and Echols that are attached to the 2018 successive petition, we note that the affidavits do not contain a recantation of any portion of the sworn testimony incriminating defendant as the murderer.

¶ 26     The 2018 successive petition, unlike the 2006 postconviction petition, included a reference to *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005), which instructs that to establish the prejudice prong of an ineffective assistance claim, the claim must be accompanied by either an actual innocence claim, or the articulation of a plausible defense. In the 2018 successive petition, defendant alleged his plausible defense was "another possible suspect." Again, based on defendant's voluntary confession and his subsequent sworn testimony in each codefendant's trial after entering his own guilty plea, we conclude defendant cannot establish the outcome of the proceeding would have been different, regardless of the alleged existence of "another possible suspect." Moreover, the record contradicts defendant's assertion that evidence of "another possible suspect" was newly discovered. The record reflects that defendant attached the

9

transcripts of his 2001 grand jury proceedings to his 2006 postconviction petition. These transcripts contain Detective Rabe's testimony that charges in the case were initially levied against another individual. Thus, we are not persuaded by defendant's assertion that this evidence concerning another suspect is newly discovered. For these reasons, defendant's ineffective assistance claim, as now asserted in the 2018 successive petition, fails.

¶ 27    Next, we consider whether the affidavits of defendant, Steele, Johns, and Echols are newly discovered, material and not merely cumulative, and of such conclusive character that they would probably change the result on retrial. Here, the State contends the affidavits did not establish the existence of newly discovered, material evidence of actual innocence. We agree.

¶ 28    Defendant's affidavit, recanting his pretrial statement to the police, does not constitute newly discovered evidence because, as the State submits, defendant would have known his pretrial statement was false prior to the entry of his own guilty plea. In addition, based on the circuit court's ruling denying defendant's initial motion to suppress, which has not been the subject of any appeal, the record clearly contradicts defendant's claim that his confessions were coerced.

¶ 29    Next, Steele's affidavit pertains to unsuccessful attempts to obtain an affidavit from plea counsel. Evidence of Steele's unsuccessful attempts to obtain plea counsel's signature on an affidavit is immaterial to defendant's claim of actual innocence.

¶ 30    Lastly, Johns and Echols's affidavits recant their respective pretrial statements to law enforcement regarding defendant's conduct at the time of each shooting. However, their affidavits do not provide any evidence alleging someone other than defendant was present and could have shot each victim. Johns and Echols's affidavits simply assert that they are innocent

10

and do not allege the existence of any new evidence concerning, for instance, the identity of the shooter, whether it be defendant or otherwise.

¶ 31　　Finally, we address a new claim, raised for the first time in the 2018 successive petition, regarding the insufficiency of the court's admonishments to defendant concerning whether defendant's guilty plea was the result of coercion. Defendant supported this claim by attaching a transcript of the plea hearing to his 2018 successive petition. However, this transcript cannot be considered newly discovered when it would have been available to defendant prior to the filing of the 2006 postconviction petition. Moreover, defendant's assertion that his guilty plea was coerced is contradicted by the record and constitutes a frivolous claim. As noted by postconviction counsel's motion to withdraw from defendant's representation in the circuit court, "[t]he transcript of the plea clearly shows that [defendant] stated that he was entering into the plea knowingly and voluntarily and that he had not been coerced or threatened." Indeed, the transcript confirms postconviction counsel's prior assertion.

¶ 32　　For the reasons set forth above, the circuit court's decision to grant the State's motion to dismiss the 2018 successive petition at the second stage is affirmed.

¶ 33　　　　　　　　　　　　　　　III. CONCLUSION

¶ 34　　The judgment of the circuit court of Peoria County is affirmed.

¶ 35　　Affirmed.

11